815 A.2d 859

**PRINCE GEORGE'S COUNTY, Maryland,**

v.

**THE WASHINGTON POST COMPANY.**

**No. 1765, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Jan. 29, 2003.

Henry Bielec (Sean D. Wallace, Leonard L. Lucchi, John A. Bielec and Karen T. Zavakos, on the brief), Upper Marlboro, for appellant.

Adam L. Perlman (Kevin T. Baine and Williams & Connolly, LLP, on the brief), Washington, DC, for appellee.

Argued before MURPHY, C.J., SALMON and KENNEY, JJ.

KENNEY, Judge.

Appellant/cross-appellee, Prince George's County (the "County"), challenges the decision of the Circuit Court for Prince George's County, determining that some of the records, or information contained therein, requested by appellee/cross-appellant, the Washington Post Co. (the "Post"), was public information pursuant to the Maryland Public Information Act ("MPIA"), Md.Code Ann. (1984, 1999 Repl.Vol., 2000 Supp.), § 10–611, *et seq.*, of the State Government Article ("SG").

The Post, in turn, contests certain limitations on the records to be disclosed. The County presents six questions and the Post two,[1] which we have distilled into one:

Did the circuit court err in its determinations regarding the Post's requests for information pursuant to the MPIA?

We affirm the circuit court's decision as to the Commanders' Information Reports, the closed Human Relations Commission records that were the subject of public hearings, the eight closed Police Department investigative reports, and the risk management database contents and fields; and we vacate, in part, the circuit court's decision regarding the police roster.

---

1. The County posed the following questions:

I. Did the court err in granting the request for declaratory judgment with respect to the Commanders' Information Report?

II. Did the court err in granting summary judgment relief as to the request for a police roster by ordering the County to produce to the Post the names of all individuals who work for the County in a public safety role?

III. Did the court err in granting summary judgment relief as to the records of the Prince George's County Human Relations Commission by ordering the County to produce to the Post copies of the Human Relations Commission records the Post improperly inspected in May 2000 in unredacted form?

IV. Did the court err in granting summary judgment relief as to the request for the Prince George's County Police Department investigative reports from closed cases and ordering the County to produce to the Post copies of the Reports from the closed cases?

V. Did the court err in granting partial summary judgment relief as to the request for the Prince George's County risk management case tracking database contents by ordering the County to produce the information in the database that is not protected by the attorney-client privilege and/or attorney work product privilege and is not the proprietary intellectual property of a third party?

VI. Did the court err in granting partial summary judgment relief as to the request for the Prince George's County risk management case tracking database field layouts by ordering the County to produce the information in the file layout that is not protected by the attorney-client privilege and/or attorney work product privilege and is not the proprietary intellectual property of a third party?

In its cross-appeal, the Post posed the following questions:

I. Whether a roster of all police officers containing each officer's name, rank, badge number, job assignment, and date of hire is available to the public under the MPIA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves numerous Post requests for police-related records made pursuant to SG § 10-611, *et seq.*[2] The County's denial of those requests resulted in two lawsuits, filed pursuant to SG § 10-623(a),[3] which are the subject of this appeal. The parties are in agreement that there are no material facts in dispute in this case.

The following factual summary is not in chronological order. It is organized according to the subject matter of the Post's MPIA requests to the County.

On January 12, 2000, a Post staff writer requested copies of the Prince George's County Police Commanders' Information

---

 II. Whether a list of the fields in the County's risk management case tracking database is available to the public under the MPIA.

**2.** SG § 10-611(g) provides, in pertinent part:

 (g) *Public record.*—(1) "Public record" means the original or any copy of any documentary material that:

 (i) is made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business; and

 (ii) is in any form, including:

 1. a card;
 2. a computerized record;
 3. correspondence;
 4. a drawing;
 5. film or microfilm;
 6. a form;
 7. a map;
 8. a photograph or photostat;
 9. a recording; or
 10. a tape.

 (2) "Public record" includes a document that lists the salary of an employee of a unit or instrumentality of the State government or of a political subdivision.

 (3) "Public record" does not include a digital photographic image or signature of an individual, or the actual stored data thereof, recorded by the Motor Vehicle Administration.

**3.** SG § 10-623(a) provides:

 Whenever a person or governmental unit is denied inspection of a public record, the person or governmental unit may file a complaint with the circuit court for the county where:

 (1) the complainant resides or has a principal place of business; or
 (2) the public record is located.

Reports ("CIRs"), also known as the daily Commander's Log, for the period between December 10, 1999, and January 10, 2000. The County denied that request on March 24, 2000, stating that the purpose of the CIRs was "to provide a vehicle for Police Department supervisors to inform Police Department management of matters that management must be made aware of to effectively manage the affairs of the Police Department." The County went on to state that CIRs were only retained for thirty days. It cited SG § 10–615(1)[4] as a basis for the County's denial.

On July 14, 2000, the same staff writer requested a "roster of all sworn officers employed by the Prince George's County Police Department, including each officer's full name, rank, badge number, job assignment and date of hire." By letter dated August 16, 2000, the County denied the Post's request, stating that the request was "contrary to the public interest" and sought "personnel information . . . not subject to public inspection." The County cited SG § 10–616(i)[5] as the justification for its denial. In the alternative, the County offered the Post "documents that detail the number of sworn officers, the allocation of sworn officers to the various districts and other assignments, and the number of sworn officers holding the various ranks." Further, the County indicated that it could provide to the Post "a list of all County employees without the job classification of the employee."

In May 2000, the staff writer obtained access, without filing an MPIA request, to a box of Prince George's County Human Relations Commission ("HRC") records containing citizen complaints of police misconduct.[6] HRC permitted the report-

---

4. SG § 10–615(1) provides an exemption from disclosure for public records that are deemed "privileged or confidential."

5. SG § 10–616(i) exempts from disclosure a personnel record of "an individual including an application, performance rating, or scholastic achievement information."

6. HRC's purpose is

to foster and encourage the growth and development of the County in such a manner that all persons shall have an equal opportunity to

er to look at closed cases that had resulted in public hearings. The staff writer subsequently requested unredacted copies of a subset of those records. Instead, the County provided redacted copies of HRC's records, excluding the identity of the officers, the complainants, the witnesses, and investigatory notes.

On August 11, 2000, the Post requested investigative reports from eight cases related to "police-involved shootings and in-custody death cases" compiled by the Prince George's County Police Department, Criminal Investigations Division ("CID"). The County orally advised the Post that its request had been denied.

On June 28, 2000, the Post requested an electronic copy of the County's risk management case tracking database, including "all records included in the database and all fields in the database." The County denied that request on July 21, 2000, citing interagency communications and attorney work-product exemptions.[7]

---

> pursue their lives free of discrimination imposed because of race, religion, color, sex, national origin, age, occupation, marital status, political opinion, personal appearance, sexual orientation, physical or mental handicap, or familial status. Discriminatory practices based upon the foregoing criteria are declared to be contrary to the public policy of the County.

Prince George's County Code, § 2–185(a) (1999 ed.)("PGCC").

7. In Maryland, Rule 2–402(c) governs the attorney work-product doctrine, which provides:

> Subject to the provisions of sections (d) and (e) of this Rule, a party may obtain discovery of documents or other tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the materials are discoverable under section (a) of this Rule and that the party seeking discovery has substantial need for the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of these materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

On July 25, 2000, the Post requested "[a] printout of the file layout of the risk management case tracking database, listing the fields by name and description." The County denied this request on August 21, 2000, stating that it did not own or maintain the database and that the owner, Trigon Administrators, Inc. ("Trigon"), considered the database "confidential proprietary information."

In response to the County's denials, the Post filed two lawsuits in the Circuit Court for Prince George's County. The first lawsuit (Case No. CAL 00–20465), filed against the County and the Prince George's County Police Department on September 5, 2000, sought declaratory and injunctive relief based on the County's failure to make the CIRs public.[8] The second lawsuit (Case No. CAL 00–22133) was filed on September 28, 2000, against the County, the County Police Department, and HRC. It sought declaratory and injunctive relief based on the County's refusal to make public the roster of all sworn officers; HRC's documents relating to police misconduct; the investigative reports compiled by CID; and documents relating to the risk management case tracking database.[9] The circuit court consolidated the two cases on December 19, 2000.

On August 30, 2001, following oral argument on the Post's motion for summary judgment, the court ruled as follows:

But suffice it to say, as far as the Commander's Information Reports are concerned, these are generated and they're circulated, and they're circulated to individuals within the department. And I understand their circulation, their circulation are not restricted to a small cadre of people who are in only a need-to-know venue. It's passed from person to person. And obviously people who don't need to know see these reports. Therefore, this Court finds that these

---

**8.** The record indicates that the Police Department was dismissed from the case, with prejudice, by the court on December 19, 2000.

**9.** The record indicates that both the Police Department and HRC were dismissed from the case by stipulation of the parties on November 13, 2000.

reports are public information. So long as they are going to be created by a Commanders [sic], it is the Court's view that they are available to the Washington Post or any other entity who operates pursuant to the First Amendment of the United States Constitution. Therefore, I'm going to grant the Motion with respect to the Commander's Information Report.

As to the police roster, I also grant the movant's Motion for Summary Judgment but with this caveat and this restriction. For the protection of individuals who may be in sensitive positions, the County may disclose separately all the names of all individuals who work for Prince Georges County in a public safety role.

As far as the Humans Relations records are concerned, I meant that very clearly that the horses are out, they're running around. Unfortunately for [the County counsel] and his boss they had nothing to do with it. The protocol was not followed by [the Post staff writer] who looked at things, and things that he saw that were within his universe of request by the Washington Post, I grant their Motion that they be disclosed.

Investigatory files, I have grave concerns about the investigatory files. I find that I am going to deny to [sic] the Motion for Summary Judgment. I don't believe that there's been enough information brought forth by the movant to say that the Court should grant that motion, and I would note that 10–618 doesn't require that the custodian give any explanation for why to deny what they deny. They have a right to deny it if they feel it's in the public interest and investigatory files are very sensitive files, and I find that they have—they, meaning the County—has sustained its burden for showing that it's in the public interest that these files not be disclosed, and that burden has not been overcome by the movant in this particular case.

The closed cases give me some concern. I do not know legally what would be the value to the public of nondisclosure of closed files, and the County has not sustained its burden in that, so I grant the Motion for Summary Judgment as to those closed investigative files.

The Risk Management database, I grant the Washington Post Motion in part and I deny in part. And here's what I mean by that. Any attorney/client information or work product of attorneys that's included in that database is not subject to disclosure. As far as intellectual property is concerned and the proprietary rights, I understand it is easier for the County to say, well, we have contracted with X company and therefore X company has said that you can't have it, and that's not on us, that's on X company. I think that's a sham. And the Court doesn't like that type of sham because the party who contracts with another party can, by contract language, build in what may be disclosed and what may not be disclosed.

On the other hand, at no time would I wish to put a company at risk as far as intellectual property is concerned. Therefore, the order of this Court is that any information that's not attorney/client information is not privileged as to work product and is not intellectual property that resides within the Risk Management database may be disclosed to the Washington Post.

Now I'm sure you'll be back again arguing what qualifies for that, and I don't mind that because I need to see specifically what it is. But we cannot place a vendor at risk with intellectual property, nor do I intend for this Court to place the attorneys in the Office of Law at risk by disclosing their work product.

Based on the Post's motion for summary judgment, the court issued a written order on October 3, 2001, granting summary judgment in favor of the Post with regard to the CIRs; the names of all individuals who work for the County in a public safety role; the unredacted HRC records; the eight closed CID records; and the requested information from the County risk management case tracking database contents and fields that were not protected by the attorney-client privilege,[10] the attorney work-product doctrine, or that was not

---

**10.** In *Harris v. Baltimore Sun Co.*, 330 Md. 595, 604–05, 625 A.2d 941 (1993), the Court of Appeals stated:

Trigon's proprietary intellectual property. The County filed a notice of appeal on October 24, 2001. On October 24, 2001, the County filed, and the Post contested, a motion to stay enforcement of the court's October 3, 2001 order, which was granted on November 7, 2001. The Post filed a cross-appeal on October 31, 2001.

## II. STANDARD OF REVIEW

This case was decided by the circuit court based on the Post's motion for summary judgment. Summary judgment "is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000) (citations omitted).

"A genuine issue of material fact is a factual dispute that is real and not imagined." *Schmerling v. Injured Workers' Ins. Fund,* 139 Md.App. 470, 483, 776 A.2d 80 (2001), *rev'd on other grounds,* 368 Md. 434, 795 A.2d 715 (2002). A material fact is one that would "affect the outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). "Summary judgment may not be defeated by a dispute as to a fact that is immaterial." *Schmerling,* 139 Md.App. at 483, 776 A.2d 80.

When reviewing a court's decision on summary judgment, we "must review the facts, and all inferences therefrom, in the light most favorable" to the nonmoving party. *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726 (2001). "Evidentiary matters, credibility issues, and material facts which are

We construe § 10–615(1), in relation to [Model Rule] 1.6(a), as imposing an objective, affirmative standard. The lawyer-custodian of public record-client information must disclose requested information unless, by disclosing, the lawyer would violate [Model Rule] 1.6(a) and thereby be exposed to professional discipline. If the requested public record is "information relating to representation of a client," which, if disclosed by the attorney, would place the attorney in violation of [Model Rule] 1.6, the information is confidential under [SG] § 10–615(1) and not to be produced under the [MPIA].

in dispute cannot properly be disposed of by summary judgment." *Underwood–Gary v. Mathews,* 366 Md. 660, 685, 785 A.2d 708 (2001) (quoting *Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 93–94, 756 A.2d 963 (2000)).

Because there is no dispute of material fact, "our review is limited to whether the trial court was legally correct." *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206 (2001) (citation omitted). We must look to whether the court correctly interpreted and applied the relevant law to the uncontested material facts. *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001). "As with all questions of law, we review this matter *de novo.*" *Fister,* 366 Md. at 210, 783 A.2d 194. Moreover, "[i]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the lower court relied in granting summary judgment." *PaineWebber Inc. v. East,* 363 Md. 408, 422, 768 A.2d 1029 (2001). In cases interpreting an MPIA request, "[f]acts necessary to the determination of a motion [for summary judgment] may be placed before the court by pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions." *Bowen v. Davison,* 135 Md.App. 152, 157, 761 A.2d 1013 (2000).

The MPIA, originally enacted and codified in 1970, was modeled after the federal Freedom of Information Act ("FOIA"), 5 U.S.C. 552, enacted by Congress in 1966. In FOIA cases, the trial court

> may grant summary judgment on the basis of government affidavits or declarations that explain why requested information falls within a claimed exemption, as long as the affidavits or declarations are sufficiently detailed, non-conclusory, and submitted in good faith, and as long as a plaintiff has no significant basis for questioning their reliability.

> *Center for Nat'l Sec. Studies v. United States Department of Justice,* 215 F.Supp.2d 94, 99 (D.D.C.2002).

■■■■■■■■■■■■■■■■
■■■■■■■■■■

## III. DISCUSSION

### A. MPIA

■■■ The MPIA provides that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."[11] SG

---

11. Although disclosure of public information is the objective of the FOIA, there are a number of exemptions from its broad reach that are to be narrowly construed. *City of Chicago v. United States Dep't of Treasury*, 287 F.3d 628, 633 (7th Cir.2002). FOIA's exemptions include information that is

(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title) provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the

§ 10–612(a).[12] The Court of Appeals in *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 73, 716 A.2d 258, 262 (1998) (citation omitted), reiterated that " 'the provisions of the [MPIA] reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government.' " "The intent of the MPIA in favor of disclosure of public records is unmistakable." *Baltimore v. Burke*, 67 Md.App. 147, 153, 506 A.2d 683, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986). Therefore, as the Court of Appeals has further explained, the provisions of the statute "must be liberally construed . . . in order to effectuate the [MPIA's] broad remedial purpose[,]" *A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068 (1983), and in favor of permitting inspection of a public record,[13] "with the least cost and least delay to the

---

law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological or geophysical information and data, including maps, concerning wells.

5 U.S.C. § 552(b).

12. SG § 10–612 provides:

(a) *General right to information.*—All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees.

(b) *General construction.*—To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, this Part III of this subtitle shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection.

(c) *General Assembly.*—This Part III of this subtitle does not preclude a member of the General Assembly from acquiring the names and addresses of and statistical information about individuals who are licensed or, as required by a law of the State, registered.

13. SG § 10–611(g) provides:

(g) *Public record.*—(1) "Public record" means the original or any copy of any documentary material that:

(i) is made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business; and

person or governmental unit that requests the inspection."
*Kirwan v. The Diamondback*, 352 Md. 74, 80–81, 721 A.2d 196
(1998) (citing SG § 10–612(b)).

Access to public records is initiated by filing a "written
application" to the governmental custodian [14] in charge of the
requested documents. SG § 10–614(a)(1). The custodian
"shall grant or deny the application," SG § 10–614(b)(1), and
follow the remaining procedures outlined in SG § 10–614(b),
which provide:

(2) A custodian who approves the application shall pro-
duce the public record immediately or within the reasonable
period that is needed to retrieve the public record, but not
to exceed 30 days after receipt of the application.

(3) A custodian who denies the application shall:

(i) immediately notify the applicant;

---

(ii) is in any form, including:
1. a card;
2. a computerized record;
3. correspondence;
4. a drawing;
5. film or microfilm;
6. a form;
7. a map;
8. a photograph or photostat;
9. a recording; or
10. a tape.
(2) "Public record" includes a document that lists the salary of an
employee of a unit or instrumentality of the State government or of a
political subdivision.
(3) "Public record" does not include a digital photographic image
or signature of an individual, or the actual stored data thereof,
recorded by the Motor Vehicle Administration.

14. SG § 10–611 provides, in pertinent part:
(c) *Custodian.*—"Custodian" means:
(1) the official custodian; or
(2) any other authorized individual who has physical custody and
control of a public record.
(d) *Official custodian.*—"Official custodian" means an officer or
employee of the State or of a political subdivision who, whether or
not the officer or employee has physical custody and control of a
public record, is responsible for keeping the public record.

(ii) within 10 working days, give the applicant a written statement that gives:

1. the reasons for the denial;

2. the legal authority for the denial; and

3. notice of the remedies under this Part III of this subtitle for review of the denial; and

(iii) permit inspection of any part of the record that is subject to inspection and is reasonably severable.

If the custodian grants an MPIA application, he or she "shall permit a person or governmental unit to inspect any public record at any reasonable time." SG § 10–613(a). If, however, the custodian denies public access to the requested information, the public agency "has the burden of sustaining a decision to deny inspection of a public record[.]" [15] SG § 10–623(b)(2)(i); *see Office of the Governor v. Washington Post Co.*, 360 Md. 520, 545, 759 A.2d 249 (2000) (quoting *Fioretti*, 351 Md. at 78, 716 A.2d 258)(" 'the public agency involved bears the burden in sustaining its denial of the inspection of public records' "); *Cranford v. Montgomery County*, 300 Md. 759, 771, 481 A.2d 221 (1984) ("The custodian who withholds public documents carries the burden of justifying nondisclosure.").

The law is clear that "the [MPIA] does not contain a general 'catchall' public interest exemption." *Office of the Governor*, 360 Md. at 554, 759 A.2d 249. As the Court of Appeals has stated:

"[C]ourts will simply no longer accept conclusory and generalized allegations of exemptions," the first burden on an agency which seeks judicial approval of a claim of exemption is to provide "a relatively detailed analysis in manageable segments." This emphasis on an explanation which presents enough detail to make understandable the issues involved in the claim of exemption without presenting so much

---

**15.** If the "custodian believes that inspection would cause substantial injury to the public interest," inspection of records may be denied "temporarily." SG § 10–619(a).

detail as to compromise the privileged material is repeatedly reflected in the federal cases.

*Cranford,* 300 Md. at 778, 481 A.2d 221 (citation omitted). The government must provide a particularized justification for withholding each portion of a public record that it claims is exempt from public disclosure.

"Required denials" of public information are governed by SG § 10–615, which provides:

A custodian shall deny inspection of a public record or any part of a public record if:

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

(i) a State statute;

(ii) a federal statute or a regulation that is issued under the statute and has the force of law;

(iii) the rules adopted by the Court of Appeals; or

(iv) an order of a court of record.

Certain specific records are protected from disclosure, except under limited circumstances, pursuant to SG § 10–616, which provides, in pertinent part:

(a) *In general.*—Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.

\* \* \*

(h) *Certain police records; criminal charging documents.*—(1) This subsection applies only to public records that relate to:

(i) police reports of traffic accidents;

(ii) criminal charging documents prior to service on the defendant named in the document; and

(iii) traffic citations filed in the Maryland Automated Traffic System.

(2) A custodian shall deny inspection of a record described in paragraph (1) of this subsection to any of the following persons who request inspection of records for the purpose of soliciting or marketing legal services:

(i) an attorney who is not an attorney of record of a person named in the record; or

(ii) a person who is employed by, retained by, associated with, or acting on behalf of an attorney described in this paragraph.

(i) *Personnel records.*—(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.

(2) A custodian shall permit inspection by:

(i) the person in interest; [16] or

(ii) an elected or appointed official who supervises the work of the individual.

Additionally, SG § 10–617 provides the following exemptions:

(a) *In general.*—Unless otherwise provided by law, a custodian shall deny inspection of a part of a public record, as provided in this section.

\* \* \*

(d) *Commercial information.*—A custodian shall deny inspection of the part of a public record that contains any of the following information provided by or obtained from any person or governmental unit:

---

16. SG § 10–611(e) provides:

 (e) *Person in interest.*—"Person in interest" means:

 (1) a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit;

 (2) if the person has a legal disability, the parent or legal representative of the person; or

 (3) as to requests for correction of certificates of death under § 5–310(d)(2) of the Health–General Article, the spouse, adult child, parent, adult sibling, grandparent, or guardian of the person of the deceased at the time of the deceased's death.

(1) a trade secret; [17]

(2) confidential commercial information;

(3) confidential financial information; or

(4) confidential geological or geophysical information.

(e) *Public employees.*—Subject to § 21–504 of the State Personnel and Pensions Article, a custodian shall deny inspection of the part of a public record that contains the home address or telephone number of an employee of a unit or instrumentality of the State or of a political subdivision unless:

(1) the employee gives permission for the inspection; or

(2) the unit or instrumentality that employs the individual determines that inspection is needed to protect the public interest.

(f) *Financial information.*—(1) This subsection does not apply to the salary of a public employee.

(2) Subject to paragraph (3) of this subsection, a custodian shall deny inspection of the part of a public record that contains information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness.

(3) A custodian shall permit inspection by the person in interest.

(g) *Information systems.*—A custodian shall deny inspection of the part of a public record that contains information about the security of an information system.

Maryland law also permits a custodian to deny a request for public information pursuant to SG § 10–618, which states, in pertinent part:

---

**17.** Trade secrets, for purposes of 5 U.S.C. § 552, is defined as "secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Public Citizen Health Research Group v. Food & Drug Admin.,* 704 F.2d 1280, 1288 (D.C.Cir.1983).

(a) *In general.*—Unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be **contrary to the public interest,** the custodian may deny inspection by the applicant of that part, as provided in this section.

(b) *Interagency and intra-agency documents.*—A custodian may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit.

\* \* \*

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

\* \* \*

(i) *Trade secrets, confidential commercial information, confidential financial information of the Maryland Technology Development Corporation.*—A custodian may deny inspection of that part of a public record that contains information disclosing or relating to a trade secret, confidential commercial information, or confidential financial information owned in whole or in part by the Maryland Technology Development Corporation.[18] [Emphasis added.]

Based on a custodian's denial of access to public records, the party requesting the information may file "a complaint with the circuit court" seeking their disclosure. SG § 10–623(a). The circuit court can base its decision to permit or deny access to the requested information on the State agency's cited exemptions or it can order an *in camera* inspection of the public records. SG § 10–623(c)(2). Although not mandatory, an *in camera* inspection "may in some cases be 'needed in order to make a responsible determination on claims of exemptions.' "[19] *Office of the Governor,* 360 Md. at 545, 759 A.2d 249 (quoting *Cranford,* 300 Md. at 779, 481 A.2d 221). In reaching a decision, the court may:

(i) enjoin the State, a political subdivision, or a unit, official, or employee of the State or of a political subdivision from withholding the public record;

---

**18.** Section (i) went into effect on July 1, 2000.

**19.** A useful procedure was recently referred to in *Maine v. United States Department of the Interior,* 298 F.3d 60, 65 (1st Cir.2002):

To facilitate a broad disclosure and assist the requester and, if necessary, a reviewing court, in determining whether the claim of exemption is justified, a practice has developed for the withholding agency to supply the requester with a Vaughn index. The index takes its name from *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (D.C.Cir.1973), and requires a correlation of the information that an agency decides to withhold with the particular FOIA exemption and the agency's justification for withholding.

That procedure has been utilized in Maryland. *See Office of the Attorney General v. Gallagher,* 359 Md. 341, 346 n. 1, 753 A.2d 1036 (2000).

(ii) pass an order for the production of the public record that was withheld from the complainant; and

(iii) for noncompliance with the order, punish the responsible employee for contempt.

SG § 10–623(c)(3).

In addition, the court may assess the "governmental unit" or the "official custodian" "actual damages and any punitive damages that the court considers appropriate if the court finds that any defendant knowingly and willfully failed to disclose or fully to disclose a public record that the complainant was entitled to inspect under this Part III of this subtitle." SG § 10–623(d). If any person permits inspection or use of public records in violation of the above laws, they may be held liable for actual and punitive damages or subject to criminal penalties. SG §§ 10–626 and 10–627.

## B. The Police Manual and Public Information

The Prince George's County Police General Order Manual (the "Police Manual"),[20] provides, in pertinent part, the following discourse on issues regarding press relations and public information:

### 1/300.05 ROLE OF THE NEWS MEDIA

The role of the news media is to inform the public. This is a legitimate and necessary task essential to the operation of a democratic system. In accomplishing this goal, members of the news media will be performing their duties at many of the events in which the Department participates.

### 1/300.10 ROLE OF THE DEPARTMENT

The Department shall actively seek a cooperative climate in which the media may obtain information on matters of public interest in a manner which does not hamper police

---

**20.** The Police Manual is established pursuant to PGCC, § 18–143, which provides, in pertinent part: "The Chief of Police shall establish written rules and regulations for the administration and discipline of the members of the Police Department. The Chief of Police shall promulgate a General Order Manual containing such rules and regulations."

operations. The Department shall inform the media of events within the public domain that are handled by or involves the agency.

## 1/300.15 RELEASE OF INFORMATION

Should an unusual or catastrophic incident occur, which would be expected to stimulate community interest, the media will be contacted by the PIO [the Public Information Office] he [sic] will assume responsibility for the release of information.

## 1/300.20 SCOPE AND CONTENT OF THE RELEASE OF INFORMATION

Scope and content of news release[s] must be determined according to the circumstances of each situation. Generally, a description of those circumstances which are not legally privileged and which will not prejudice the rights of suspects or interfere with an investigation will be offered. Such determinations shall be made by the PIO, or the senior officer at the incident scene after he has [a] consultation with the PIO and the investigating officer.

\* \* \*

## 1/400.05 REQUESTS FOR INFORMATION

The public and the media may direct inquiries to the Department requesting information on a variety of subjects. While it is Department policy to fulfill these requests, it will not always be possible to do so. The determination to release information or participate in interviews will be made according to the facts of the case. Routine requests shall normally be coordinated by through [sic] PIO.

## C. Commanders' Information Reports

 The County argues that the CIRs are exempt from public disclosure, citing their status as interagency and intra-agency documents, pursuant to SG § 10–618(b), because their disclosure would violate the executive privilege doctrine. It further contends that disclosure of the CIRs is exempt under the personnel records exemption, SG § 10–616(i), and

the investigations exemption, SG § 10–618(f)(1)(i).[21] The County explains that the release of the CIRs to the public would be contrary to public policy, because their disclosure would induce a chilling effect on the production of "frank and honest reporting" in CIRs. The County also asserts that the CIRs are destroyed after thirty days. Instead of providing CIRs to the media, the County explains that it provides the Post with a weekly "list of every crime that has occurred" and press releases regarding any "serious incidents that require police action or involvement" within twenty-four to forty-eight hours, depending on the day the incident occurred.[22]

The Post argues that the CIRs do not contain exempted information and that no evidence suggests that they contain "confidential advice or deliberations" that satisfies the executive privilege doctrine. It asserts that the CIRs contain "factual summaries of events . . . and contain[ ] no information whatsoever about the County's deliberative process." In the event that any exempt material is included within the CIRs, the Post contends that the County has an obligation to redact those portions, pursuant to SG § 10–614(b)(3)(iii), rather than deny the entire MPIA request.

 The Court of Appeals has recognized that the executive privilege doctrine is "rooted in the separation of powers principle set forth in Article 8 of the Maryland Declaration of Rights." *Office of the Governor*, 360 Md. at 557, 759 A.2d 249. Accordingly, "if the records here at issue, or any part of them,

---

**21.** Because the County did not argue to the circuit court that the CIRs met the investigations exemption pursuant to SG § 10–618(f), and only made such an argument to us in its reply brief, we do not consider it preserved on appeal. Maryland Rule 8–131(a) ("the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court"). Originally, in its March 24, 2000 denial letter to the Post, the County stated that the CIRs were denied pursuant to SG § 10–615(1).

**22.** We further note that the County cannot sidestep the MPIA request by offering substitute records. According to Maryland law, the County must either provide the requested information or establish an exemption pursuant to SG §§ 10–615 through 10–618 when it denies a MPIA request.

are non-disclosable under the executive privilege doctrine, then such records or parts of records are exempt from disclosure under § 10–615(1) of the [MPIA]." *Id.* In that case, the Court stated:

The doctrine of executive privilege, in addition to protecting military and diplomatic secrets, **is chiefly designed to protect confidential advisory and deliberative communications to government officials.** This Court in the *Hamilton* case thus explained (287 Md. at 558, 414 A.2d at 922):

"The necessity for some protection from disclosure clearly extends to confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action. A fundamental part of the decisional process is the analysis of different options and alternatives. Advisory communications, from a subordinate to a governmental officer, which examine and analyze these choices, are often essential to this process. The making of candid communications by the subordinate may well be hampered if their contents are expected to become public knowledge."

After reviewing cases in the United States Supreme Court and other courts, we pointed out in *Hamilton [v. Verdow,* 287 Md. 544, 414 A.2d 914 (1980) ] that

"the cases throughout the country, both federal and state, have recognized the doctrine of executive privilege which, in addition to state and military secrets, gives a measure of protection to the deliberative and mental processes of decision-makers." [*Hamilton,*] 287 Md. at 561, 414 A.2d at 924.

The Court went on in *Hamilton* to hold that the privilege "is for the benefit of the public and not the governmental officials who claim the privilege" (287 Md. at 563, 414 A.2d at 924), that the privilege is not absolute, and that in "many situations the courts have engaged in a balancing process, weighing the need for confidentiality against the ... need for disclosure and the impact of nondisclosure upon the fair administration of justice." 287 Md. at 563, 414 A.2d at 925.

We also held in *Hamilton* that when a government official makes a formal claim of executive privilege for confidential communications "of an advisory or deliberative nature, there is a presumptive privilege, with the burden upon those seeking to compel disclosure." *Ibid.*

Turning to factual documents as opposed to documents of an advisory or deliberative nature, we held in *Hamilton* that "ordinarily, 'memoranda consisting only of compiled factual material' " are disclosable, 287 Md. at 564, 414 A.2d at 925, quoting *EPA v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119, 132 (1973). We recognized in *Hamilton*, 287 Md. at 564–565, 414 A.2d at 925–926, however, that

> "material cannot always 'easily be separated into fact finding and decision making categories,' *Boeing Airplane Company v. Coggeshall, supra*, 280 F.2d 654 at 662. Moreover, some factual material is entitled to a degree of protection under the privilege, although not to the same extent as opinions and recommendations. This would include facts obtained upon promises or understandings of confidentiality, investigative facts underlying and inter-twined with opinions and advice, and facts the disclosure of which would impinge on the deliberative process. In these situations, the government's asserted reasons for nondisclosure are weighed against the litigant's need for discovery in light of the particular circumstances of each case. *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342–346 (E.D.Pa.1973); *O'Keefe v. Boeing Company, supra*, 38 F.R.D. [329] at 334–336 [ (S.D.N.Y.1965) ]." [Emphasis added. Some citations omitted.]

*Office of the Governor*, 360 Md. at 557–59, 759 A.2d 249.

In *Cranford*, 300 Md. at 774, 481 A.2d 221, the Court of Appeals stated:

> Because the executive privilege aspect of the agency memo-randa exemption is designed to protect recommendations in the decision-making process, factual matters are not within that exemption.... Rarely, however, will a given document reflect purely deliberative or policy-making processes with-

out factual matters.... The [MPIA] similarly requires agencies to utilize the principle of severability in responding to requests for public records.

In fact, the MPIA provides that a custodian shall "permit inspection of any part of the record that is subject to inspection and is reasonably severable." SG § 10–614(b)(3)(iii).

We find no evidence that the information contained in the CIRs would be considered "confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action." *Hamilton,* 287 Md. at 558, 414 A.2d 914. Based on those cases, we perceive no error in not recognizing executive privilege as a basis for a blanket denial of the CIRs and therefore we must consider other exemptions.

The "interagency and intra-agency" exemption cited by the County permits the denial of public information when "any part of an interagency or intra-agency letter or memorandum ... would not be available by law to a private party in litigation with the unit." SG § 10–618(b). As explained in *Office of the Governor,* 360 Md. at 551, 759 A.2d 249, the

permissible exemption for interagency and intra-agency letters or memoranda to some extent reflects that part of the executive privilege doctrine encompassing letters, memoranda or similar internal government documents containing confidential opinions, deliberations, advice or recommendations from one governmental employee or official to another official for the purpose of assisting the latter official in the decision-making function.

"Under the language of the federal Freedom of Information Act, 5 U.S.C. § 552(b)(5), which contains an exemption for interagency or intra-agency memoranda or letters and which is worded the same as § 10–618(b) of the [MPIA], the courts have held that the exemption is limited to documents created by government agencies or agents, or by outside consultants called upon by a government agency 'to assist it in internal decisionmaking.' " *Office of the Governor,* 360 Md. at 552, 759 A.2d 249 (quoting *County of Madison v. United*

*States Dep't of Justice,* 641 F.2d 1036, 1040 (1st Cir.1981)). It accordingly protects documents normally privileged in the civil discovery context. *FTC v. Grolier, Inc.,* 462 U.S. 19, 26, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

The Police Manual, section 5/113, describes CIRs as:

Information concerning incidents that may generate attention from the media, public or department management, will be immediately submitted to the affected member's Commander. The police officer who is in charge and/or in control of the situation or prisoner, will be responsible for writing the Commander's Information Report for the following incidents:

- Major Crimes[.]

- Unusual or controversial incidents[.]

- Whenever a police officer is injured (if the injured officer is incapacitated and unable to complete the Commander's Information Report, the supervisor will assume this responsibility).

- Whenever the police officer uses force involving a firearm, night stick or blackjack, or whenever an officer strikes a prisoner.

- Whenever a prisoner is injured. This includes injuries inflicted by departmental personnel or injuries self induced, whether intentional or accidental.

- Whenever a prisoner becomes ill while in custody and receives medical treatment.

The Sector Supervisor will be notified and will immediately respond, review the situation and sign the Commander's Information Report when completed by the involved officer.

- Prior to completion of his tour of duty, the supervisor will review and forward the Commander's Information Report to the appropriate Commander.

- The Division/District Commander will forward the Commander's Information Report to the appropriate Bureau Chief.

These reports are to be "received each business day." Police Manual, § 1/805.05.

It is undisputed that CIRs are intra-agency documents. If their inspection "would be contrary to the public interest," the issue is their availability "by law to a private party in litigation with the unit." SG § 10–618(a) & (b).

Here, the trial court based its decision to make the CIRs available to the Post as a public document, at least in part, on the fact that they were "circulated to individuals within the department.... [N]ot restricted to a small cadre of people who are in only a need-to-know venue." Moreover, the record includes a copy of an undated letter, addressed "Dear Citizen," in which the County Police Department, District IV, attempted to inform citizens about patterns utilized by suspects arrested in breaking and entering offenses. Attached to that letter was a copy of a CIR that included descriptions of the suspects, the general area where the alleged crime took place, and the responding officers' names and identification numbers. Redacted were the names and addresses of the victims and witnesses. In light of the above-summarized principles, and the fact that those reports contain factual information concerning alleged criminal incidents, the CIRs, or at least some portion of them, would appear to be discoverable to "a private party in litigation with the unit." SG § 10–618(b).

With regard to the personnel records exemption, SG § 10–616(i), the Court of Appeals has stated:

The term "personnel record" is not expressly defined in the statute. Nonetheless, the language of subsection (i) discloses what type of documents the Legislature considered to be personnel records. The statute lists three categories of documents which are: (1) an application for employment; (2) performance rating; and (3) scholastic achievement. Although this list was probably not intended to be exhaustive, it does reflect a legislative intent that "personnel records" mean those documents that directly pertain to employment and an employee's ability to perform a job.

*Kirwan,* 352 Md. at 82–83, 721 A.2d 196. The Court went on to note that records that "do not relate to [the employee's] hiring, discipline, promotion, dismissal, or any matter involving his status as an employee ... do not fit within the commonly understood meaning of the term 'personnel records.' " *Id.* The Court concluded that, in light of the Act's policy favoring disclosure, the General Assembly did not intend "that *any* record identifying an employee would be exempt from disclosure as a personnel record." *Id.* at 84, 721 A.2d 196; *see also* 78 Op. Att'y Gen. 291, 293 (1993) (stating that the purpose of SG § 616(i) " 'is to preserve the privacy of personal information about a public employee that is accumulated during his or her employment' ") (citation omitted).

We therefore conclude that CIRs are not protected generally by the personnel records exemptions. In fact, the County's own brief indicates that the press releases regarding "major incidents are created from the CIRs." Although the record is unclear whether all the CIRs requested by the Post were within the County's possession or whether they were destroyed after thirty days, we are persuaded that the exemptions cited by the County do not automatically preclude disclosure of the CIRs as a class. Obviously, documents not in existence cannot be examined. *Office of the Governor,* 360 Md. at 540, 759 A.2d 249. To the extent that a particular CIR might include protected information, specific information for which an exemption is claimed, it can be severed from the CIR prior to its release and the basis for that redaction can be challenged by the requestor.

## D. Police Rosters

The County claims that the Post's request for a roster of all sworn officers, including their full names, ranks, badge numbers, job assignments, and dates of hire is exempt from public disclosure pursuant to the "personnel records" exemption under SG § 10–616(i), *supra.* It further contends that the disclosure of such detailed officer information is shielded from disclosure based upon the "investigations" exemption protecting "records that contain intelligence information or security

procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff." SG § 10–618(f)(1)(iii). The County opines that the disclosure of such detailed information would provide no benefit to the public, but would jeopardize the lives of the police officers and compromise both current and future police investigations.[23]

The Post asserts that the County "routinely" provides the press and the public with officers' names, rank, badge number, job assignment, and number of years on the job. In addition, the Police Manual, § 3/209.20, permits an officer to release his or her name, rank, I.D. number, work telephone number, and duty assignment address. The Post contends that the County misreads SG § 10–618(f) in its attempt to shelter a police roster under the "investigations" exemption. Therefore, in its cross-appeal, the Post argues that it is entitled to the police roster, including all names, ranks, badge numbers, job assignments, and dates of hire, rather than a roster of public safety employees.

We are satisfied that the personnel records exemption relied on by the County, SG § 10–616(i), does not govern with regard to the request for a police roster. As we discussed above, records that do not directly "relate to [the employee's] hiring, discipline, promotion, dismissal, or any matter involving his status as an employee ... do not fit within the commonly understood meaning of the term 'personnel records.'" *Kirwan*, 352 Md. at 83, 721 A.2d 196. Therefore, we are unpersuaded by the County's argument based on a personnel records exemption.

Records of investigations are governed by SG § 10–618(f)(1)(i), which provides that records of investigations "conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff" may be

---

23. In its letter denying the Post's request, the County cited the personnel records exemption under SG § 616(i) and that the release of a police roster would be "contrary to the public interest."

exempt from public disclosure if their release would "be contrary to the public interest." Moreover, the Court of Appeals has stated:

> [S]imply because an agency asserts that its files were compiled for law enforcement purposes is insufficient under the language of the exemption. The agency must, in each particular [MPIA] action, demonstrate that it legitimately was in the process of or initiating a specific relevant investigative proceeding in order to come under the aegis of the exemption.

*Fioretti*, 351 Md. at 82, 716 A.2d 258. The Court of Appeals has further held: " '[W]here an agency fails to "demonstrate that the ... documents [sought] relate to any ongoing investigation or ... would jeopardize any future law enforcement proceedings," ' the exemptions would not prevent disclosure." *Fioretti*, 351 Md. at 87, 716 A.2d 258 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978)). The Attorney General has previously opined that the following are public records: a complaint, including the name and address of the victim, filed with a law enforcement agency; a police investigative report and arrest log that are found not contrary to the public interest;[24] and a police record. *See* 77 Op. Att'y Gen. 183–84 (1992); 64 Op. Att'y Gen. 236–37, 243 (1979); 63 Op. Att'y Gen. 543, 548 (1978); 57 Op. Att'y Gen. 518–19 (1972).

The analogous federal statute provides a more generalized exemption for "records or information compiled for law enforcement purposes ... [that] could reasonably be expected to interfere with enforcement proceedings."[25] 5 U.S.C. 552(b)(7)(A).

---

**24.** The arrest log indicated the date of the arrest, the name of the suspect arrested, the address, age, and race of the suspect, the name of the arresting officer, and the criminal charge and appropriate case number.

**25.** "Congress had a two-fold purpose in enacting the exemption for investigatory files [under 5 U.S.C. § 552(b)(7) ], [namely] to prevent the premature disclosure of the results of an investigation so that the

The circuit court granted the Post access only to a list of "all individuals who worked for the County in a public safety role." The intent of the MPIA, however, is not to exclude from the public information that had previously been disseminated to or known by the public. *See Gallagher v. Office of the Att'y Gen.*, 141 Md.App. 664, 672, 787 A.2d 777 (2001). The record extract includes press releases that include summaries of events, including a police officer's name, rank, identification number, and the number of years he or she served with their current section or division. In addition, the Prince George's County Code, § 18–158 (1999 ed.)("PGCC") mandates: "Every member of the Police Department shall furnish his or her name and identification number to any person who requests this information." Police Manual, § 3/209.20 also permits the release of an officer's "name, rank, [identification] number," and "duty assignment address."

Therefore, we conclude that the Post's request for a police roster is not automatically shielded from disclosure pursuant to the investigations or personnel exemptions. Here, the County failed to provide particularized justification

---

Government can present its strongest case in court, and to keep confidential the procedures by which the agency conducted its investigation and by which it has obtained information." *Frankel v. SEC*, 460 F.2d 813, 817 (2d Cir.N.Y.1972), *cert. denied*, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972). " 'Although typically there must be a pending or a specific concrete prospective law enforcement proceeding' at issue, ... Exemption 7A has also been extended to protect information related to ongoing investigations likely to lead to such proceedings[.]" *Center for Nat'l Sec. Studies*, 215 F.Supp.2d at 101 n. 9 (citations omitted). The United States District Court for the District of Columbia further stated:

Exemption 7A [exempting law enforcement record] does not authorize "blanket exemptions" for "all records relating to an ongoing investigation" or "merely because [such information] relates to a pending investigation." Rather, the Government must divide the undisclosed information into "categories that are sufficiently distinct to allow a court to grasp 'how each ... category of [information] if disclosed, would interfere with the investigation.' " Application of the mosaic theory would allow the Government to sidestep this Exemption 7A requirement. [Internal citations omitted.]

*Id.* at 104.

to deny the request for a roster. Instead, it made a blanket denial of the request because "disclosure of the names and job assignments would jeopardize the life of officers[.]" The court restricted the release of information to the Post to only "the names of all individuals who work for [the County] in a public safety role." That restriction appears too broad, considering that the officers' full name, rank, badge number and date of hire would ordinarily be disclosed and the fact that this information is, in many instances, included in County press releases.

We believe, however, that in certain instances the disclosure of an officer's identity and job assignment might need to be considered on a case by case basis pursuant to the "investigations" exemption provided by SG § 10–618(f). For example, the County may not be required to include information regarding those officers who operate in an undercover or covert manner, or perhaps, in some instances, if an officer is assigned to a particular assignment or division. *See Nunez v. DEA*, 497 F.Supp. 209, 212 (S.D.N.Y.1980) (finding that 5 U.S.C. § 552(b)(7)(F), which exempts from disclosure records that "could reasonably be expected to endanger the life or physical safety of [a law enforcement] individual," precluded the disclosure of names of DEA personnel). In some situations, to disclose the number of officers assigned to a particular task force or division may be counterproductive from an investigations viewpoint and contrary to the public interest.

### E. Human Relations Commission Records

The County cites the following exemptions for its decision to provide redacted copies of the HRC reports to the Post: the investigations exemption provided by SG § 10–618(f); the personnel records exemption provided by SG § 10–616(i); and the State statute exemption under SG § 10–615(2), citing Art. 27, §§ 727–734, the "Law Enforcement Bill of Rights" ("LEOBR").[26] The Post argues that documents that it re-

---

26. "The LEOBR was enacted in 1974, ... not for the purpose of defining the scope of the Chief's substantive authority, but in order to

quested concerned only closed cases that were the subject of public hearings. It contends that neither the "personnel records" nor the "investigations" exemptions apply to HRC's reports.

A "formal hearing" before the HRC is governed by PGCC, § 2–204, which provides:

(a) Formal hearings shall be convened in cases in which conciliation or mediation has failed. After the entry of a finding to that effect or not later than ninety (90) days after the Executive Director determines a violation has occurred, the entire file including the complaint and any and all findings shall be certified to. The Chairman shall cause a written notice to be issued and served in the name of the Commission together with a copy of the complaint, requiring the respondent to answer the charges of the complaint at a **public hearing** before the Commission at such time and place as may be certified in the notice.[27]

(b) The Chairman shall thereupon assign the case to be heard before either the full Commission, or a tribunal consisting of the appropriate Committee or Panel of Commissioners as described in section 2–189. A transcript of all testimony at the hearing shall be made. The case in support of the complaint shall be presented at the hearing by the Executive Director. No Commissioner who previously made or participated in the investigation or caused the complaint to be filed shall participate in the hearing as a

---

guarantee that police officers are afforded certain procedural safeguards during any investigation and subsequent hearing which could result in disciplinary action." *FOP, Montgomery County Lodge No. 35 v. Mehrling*, 343 Md. 155, 181, 680 A.2d 1052 (1996); *see also Baltimore v. Maryland Comm. Against Gun Ban*, 329 Md. 78, 85, 617 A.2d 1040 (1993).

27. Distinguished from a "formal hearing," an "[i]nformal hearing shall mean any inquiry, forum, investigation, or meeting at which compulsory processes are not invoked and a record is not prepared for the purpose of providing the basis of the Commission's compulsory processes. Informal hearings are not required to be open to public or press." PGCC, § 2–186(a)(9).

witness, nor shall he participate in the deliberations of the tribunal in such case. [Emphasis added.]

According to the PGCC, "[t]he Commissioner's staff shall upon receipt of a sworn complaint, transmit a copy of any such complaints to the Chief of any Law Enforcement Agency involved, and the State's Attorney promptly after filing." PGCC, § 2–229(b). If it is determined that the alleged acts of discrimination, as defined by PGCC, § 2–186(a)(3),[28] have merit

the Commission shall forward a request to the Law Enforcement Agency involved requesting that appropriate disciplinary action be taken and shall at the same time forward a copy of the request to the State's Attorney. The request shall set forth the facts concerning the incident and the name of the officer(s) involved, the name and address of the complaining party and all witnesses and a copy of all information compiled by the Commission, along with a copy of the findings of facts, conclusions, and transcript of testimony if a hearing has been held by the Commission.

PGCC, § 2–230(a).

In cases involving acts of "[p]olice harassment," "[t]he excessive use of force in the performance of [the officer's] duties," or "[t]he use of language which would demean the inherent dignity of any person," as outlined in PGCC, § 2–229(a), the Commission

shall complete its investigation, conduct a **public hearing** before three members of the Law Enforcement Panel of the Commission, in accordance with sections 2–205[29] and 2–

---

**28.** PGCC, § 2–186(a)(3) defines acts of discrimination as:

[A]cting, or failing to act, or unduly delaying any action regarding any person because of race, religion, color, sex, national origin, age (except as required by State or federal law), occupation, familiar status, marital status, political opinion, personal appearance, sexual orientation, or physical or mental handicap, in such a way that such person is adversely affected in the areas of housing and residential real state, employment, law enforcement, education, financial lending, public accommodations, or commercial real estate.

**29.** PGCC, § 205 concerns the "[r]ights of respondent at [a] hearing."

206 [30] of this Code, and shall report in writing its **comments and recommendations** to the Chief of Police and to the Citizen Complaint Oversight Panel, within twenty (20) working days after the completion of the investigation by the Internal Affairs Division[.] [Emphasis added.]

PGCC, § 2–231.

State Government § 10–618(f) protects the investigations records of the following sources: the Attorney General; a State's Attorney; a city or county attorney; a police department; a sheriff; and documents compiled for any other law enforcement, judicial, correctional, or prosecution purposes. In *Equitable Trust Co. v. State, Comm'n on Human Relations*, 42 Md.App. 53, 74, 399 A.2d 908 (1979), *rev'd on other grounds*, 287 Md. 80, 411 A.2d 86 (1980), we examined the scope of the investigations exemption and determined whether the agency's records were those that the lawmakers sought to protect. We stated that "the [State Commission on Human Relations] is not a named 'law enforcement agency' " pursuant to Maryland's former public information statute. *Id.* at 75, 399 A.2d 908. Consequently, in order for the "investigations" exception to apply to the Commission's records, "it must be expressly shown that the data sought by Equitable is part of investigatory files compiled by the Commission for law enforcement or prosecution purposes." *Id.* There is no indication that the requested HRC records were compiled for law enforcement or prosecution purposes. Therefore, they are not protected by the exemption provided by SG § 10–618(f).

The County further cites the "personnel records" exemption, SG § 10–616(i). As stated above, the Court of Appeals has asserted that records that "do not relate to [the employee's] hiring, discipline, promotion, dismissal, or any matter involving his status as an employee ... do not fit within the commonly understood meaning of the term 'personnel records.' " *Kirwan*, 352 Md. at 83, 721 A.2d 196. In this

---

**30.** PGCC, § 206 permits a "reasonable amendment to be made to any complaint or answer."

case, the documents at issue, which relate to the actions of an individual, were produced by an agency with no supervisory authority over the individual. Instead, HRC is an entity that, after a public hearing, provides "its comments and recommendations to the Chief of Police and to the Citizen Complaint Oversight Panel." PGCC § 2–231.

The County also relies on the "contrary" to "a State statute" exemption, SG § 10–615(2), citing the LEOBR. At the time of the Post's requests, the Police Manual included PGCC § 18–186.07(c), which provided: [31]

The investigation and hearing by the Human Rights Commission shall not be construed to constitute an investigation or hearing that could lead to disciplinary action, demotion, or dismissal of a law enforcement officer. The comments and recommendations may be used by the Panel to assist the Panel in its evaluation of the completeness and impartiality of the investigation by the Internal Affairs Division.

See *Robinson v. State*, 354 Md. 287, 309, 730 A.2d 181 (1999) ("While confidentiality does go to discoverability, it does not guarantee insulation of the confidential matter from disclosure. The confidentiality interest must be balanced[.]"); *Antell v. Attorney General*, 52 Mass.App.Ct. 244, 247, 752 N.E.2d 823 (2001) (finding that documents in possession of attorney general, relating to investigation of police officers, were not protected from disclosure under investigatory materials exemption to Public Records Act, where investigations into police misconduct had been concluded); *Staton v. McMillan* 597 So.2d 940, 941 (Fla.Dist.Ct.App. 1st Dist.1992) (finding that a statutory exemption from disclosure under Public Rec-

---

31. The Police Manual, § 18–186.07 was repealed and amended in 2001. That amendment, however, was not signed by the County Executive until November 26, 2001, and did not take effect until "forty-five (45) calendar days after it" became law. Compilation of Laws, County Council of Prince George's County, Maryland, Bill No. CB–59–2001. Therefore, Police Manual, § 18–186.07 was in effect at the time of the Post's requests, the County's denial, and the proceeding before the circuit court.

ords Act did not apply to records that had already been made available at a public hearing).

Based on the above principles, we find no error in the court's order to release HRC's closed records in cases involving a public hearing.

### F. CID Investigative Reports

The County asserts that the court erred in granting the Post access to eight closed CID investigative reports involving "police-involved shootings and in-custody deaths." [32] It contends that those reports are exempt from public disclosure pursuant to the investigations exemption contained in SG § 10–618(f), stating that the release of the investigative reports would be contrary to the public interest. More specifically, the County contends that the court erred in drawing a distinction between open and closed investigatory files and that the Post is not a "person in interest" who has access to such files. It was only in the County's reply brief that it first asserted that the release of CID's files "will reveal investigative techniques and procedures" and that the "files contained the mental impressions and approaches employed by investigators to ascertain the validity of claims and events under investigation." [33] It argued that "[t]he release of these files could endanger the lives of several individuals including officers, investigators, and witnesses."

The Post responds that the "investigations" exemption does not permit a blanket denial of all requests that involve investigatory information. Instead, the Post cites *Cranford*, 300 Md. at 772, 481 A.2d 221, contending that "withholding [investigative reports] might serve no public interest" and therefore

---

**32.** The County admits that it did not provide a written response to this request, but that it "advised" the Post that its request had been "denied."

**33.** Because the County did not present that argument to the circuit court, only mentioning it in its reply brief, we do not consider it preserved. Maryland Rule 8–131(a) ("the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court").

should be produced. It asserts that the release of eight closed case files does not meet that standard.

As stated above, SG § 10–618(f) permits, when contrary to the public interest, the denial of inspection of "records of investigations conducted by ... a police department, or a sheriff" and "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose[.]" SG § 10–618(f)(i) and (ii). CID investigative reports generally fit the criteria of the investigations exemption and their release in certain instances could be contrary to the public interest.

The County, however, only argued that the release of the eight closed cases would be contrary to the public interest, arguing the investigations exemption and that the investigations exceptions fails to provide a distinction between open and closed public record. We do not agree.

Although the County is correct that SG § 10–618(f) does not differentiate between open and closed investigatory records, SG § 10–618(a) might permit that distinction in determining whether inspection "would be contrary to the public interest." In this instance, the County failed to demonstrate that disclosure of the eight closed investigatory files would be contrary to the public interest. The County merely argued to the circuit court that it did not "see any exception in the MPIA about closed and active cases." The record is absent any information concerning the public harm that might be caused by the release of the closed CID records. Therefore, based on the record in this case, we find that the circuit court did not err in releasing the closed investigatory files. This decision would not preclude the County from demonstrating in the future that the release of other such files would be contrary to the public interest.

## G. Database Contents & Fields

The County argues that the court erred in permitting the release of database contents that is "not protected by the attorney-client privilege and/or attorney work-product doc-

trine and is not proprietary intellectual property of a third party." It explains that the release of the County's risk management case tracking database contents is exempt from disclosure pursuant to the "interagency and intra-agency" exemption, SG § 10–618(b), in addition to the attorney-client privilege, Md.Code Ann. (1974, 1998 Repl.Vol.), § 9–108 of the Ct. & Jud. Proc. Article, and the attorney work-product doctrine, Rule 2–402(c).

With regard to the database field layouts,[34] the County contends that they are not public records pursuant to SG § 10–611(g), *supra*, because they were not produced by the County, but rather it was created by Trigon, a Virginia company. It further asserts that, if it is deemed a public document, it is exempt from public access based on the "commercial information" exemption, SG § 10–617(d).

The Post counters that the County merely made a blanket claim to the circuit court of why the records should not be released and failed to demonstrate that the database contents meet the exemptions cited by the County. It further contends that although the "list of fields" is not created by the County, it was a public record because it was documentary material "received" by the County pursuant to SG § 10–611(g)(1)(i). In addition, the Post claims that the County failed to demonstrate that the "list of fields" was "confidential commercial information" exempted by SG § 10–617(d), and therefore it should be accessible to the public.

According to Maryland statutory law, a "public document" is defined as a record "made by a unit or instrumentality of the State government or of a political subdivision or **received by the unit or instrumentality in connection with the transaction of public business.**" SG § 10–611(g)(1)(i) (emphasis added). A "computerized record" is a form of a public record. SG § 10–611(g)(1)(ii)(2).

---

**34.** We presume that the field layouts are the respective row or column headings that describe the information contained therein.

█ Here, Trigon set up the risk management database and fields for the County to be used for the transaction of public business. Therefore, we believe that both are public records pursuant to SG § 10–611(g)(1) and available, absent an applicable exemption, for public dissemination pursuant to a MPIA request. *See Hartford Courant Co. v. Freedom of Info. Comm'n,* 261 Conn. 86, 89, 101, 801 A.2d 759 (2002) (finding that "a digital copy of all of the fields of information" produced in a database fell within the State's freedom of information statute).[35]

█ The circuit court appropriately acknowledged that the application of permitted exemptions will need to be worked out on a case by case basis. For example, if it is relying on the work-product doctrine, the County should " 'identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to all portions of the document.' " *Maine,* 298 F.3d at 69 (citation omitted). In addition, the County or Trigon has the burden of demonstrating how the list of database fields is Trigon's proprietary intellectual property.

**JUDGMENT AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLANT.**

---

35. We note that the County's record extract contains a letter from it to the Post, dated March 29, 2000, providing access to "the database field layouts for tables from the computer-aided dispatch system." The list includes the headings utilized in processing events and even contains the "fields" that were "not available" or that contained "data that is subject to an exemption" under the MPIA. Therefore, in that instance, the County provided to the Post the "fields" despite its claim that the "data" was exempt from disclosure.