*Baltimore Action Legal Team, et al., v. Office of the State's Attorney of Baltimore City, et al.,* No.1251, September Term 2020. Opinion by Wells, J.


**GENERAL PROVISIONS – MARYLAND PUBLIC INFORMATION ACT – PERSONNEL RECORDS**

Maryland Code Annotated, General Provisions ("GP") Article, section 4-311, exempts from request for disclosure "a personnel record of an individual, including an application, performance rating, or scholastic achievement information." GP § 4-311(a). The State's Attorney's Office for Baltimore City asserted that a list of 305 police officers with "integrity issues" (the "do not call" list) was exempt from disclosure under GP § 4-311. The Court of Special Appeals held that the personnel records exemption did not apply in this instance for two reasons. *First*, the agency claiming the exemption must have supervising authority over the individual. *Second*, the agency must have authority over the records. Additionally, to qualify under the exemption, the records must relate to personnel issues, such as a performance rating, or, generally, an individual's ability to perform a job. Here, the do not call list consists of the names of individual police officers whom the State's Attorney's Office concluded were untrustworthy, not the officers' personnel records, as statutorily defined. Further, the State's Attorney's Office did not have supervisory authority over the officers, nor did the State's Attorney's Office maintain the personnel files of the officers. In complying with a public information request, any such records, such as internal affairs reports, could have been shielded from disclosure while the list was provided.


**GENERAL PROVISIONS – MARYLAND PUBLIC INFORMATION ACT – ATTORNEY WORK PRODUCT**

The State's Attorney's Office for Baltimore City also asserted that the do not call list was exempt from disclosure as attorney work product. The attorney work-product doctrine protects from disclosure documents "produced in anticipation of litigation or in rendition of legal services." *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 401 (1998). The Court of Special Appeals held that the do not call list was created to aid the State's Attorney's Office in avoiding potentially compromising a criminal prosecution by relying primarily on a police officer with "integrity issues." The creation and maintenance of such a list could not "fairly be said to have been prepared or obtained because of the prospect of litigation."

**GENERAL PROVISIONS – MARYLAND PUBLIC INFORMATION ACT – FEE WAIVER**

Under GP §4-206(e) one making a request under the Maryland Public Information Act ("MPIA") may ask the custodian of records to waive the fees for producing the records if the requestor asks for a waiver and the custodian of records considers the requestor's ability to pay the fee "and other relevant factors." Here, the State's Attorney's Office's custodian of records denied appellant's two requests for fee waivers under the MPIA for three reasons, as outlined in its motion for summary judgment. *First*, the custodian believed that appellant could pay the fees. *Second*, the State's Attorney's Office determined that the requested disclosures would not have aided the public's understanding of that office's operations and activities. *Third*, the fee waiver would not benefit the public because, in the State's Attorney's opinion, diverting office staff for the estimated 438 hours to copy the requested documents would remove them from their assigned task of prosecuting criminals. This Court held that the denial of both requests was arbitrary and capricious. With regard to appellant's first request, the "operations and activities" criteria the State's Attorney's Office cited in denying this request was derived from language in the federal Freedom of Information Act, which the Maryland Attorney General's Office's ("MAG") cited in providing written guidance when assessing information requests. But, within the same advisement, the MAG also stated that an additional criterion was "whether disclosure of records will shed light on 'a public controversy about official actions.'" Here, that clearly was a criterion as appellant's request arose amid a public inquiry into police corruption in Baltimore City. The same criteria was relevant in the denial of appellant's second fee waiver request. While appellant's ability to pay the fee requested was but one criterion, the State's Attorney's Office's denial of the fee waiver based primarily on the belief that appellant could pay the fees, without more, was arbitrary and capricious.

Circuit Court for Baltimore City
Case No. 24-C-20-001271

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1251

September Term, 2020

_____

BALTIMORE ACTION LEGAL TEAM, ET AL.

v.

OFFICE OF THE STATE'S ATTORNEY OF
BALTIMORE CITY, ET AL.

_____

Berger,
Wells,
Ripken,

JJ.

_____

Opinion by Wells, J.

_____

Filed: December 17, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Between December 2019 and January 2020, appellant Baltimore Action Legal Team ("BALT") made three requests under the Maryland Public Information Act ("MPIA") to appellee, the Office of the State's Attorney for Baltimore City ("SAO"). BALT specifically requested that the SAO provide:

1. A list of 305 Baltimore City (hereafter, "City") Police Department officers with questionable integrity, and supporting information, that Baltimore State's Attorney Marilyn Mosby stated she maintained;

2. Records relating to any investigations of all City police officers that were closed in 2019 and any such investigations held open for over sixteen months;

3. Charges filed on January 30, 2020 regarding a specific City police officer and records relating to any open or closed investigations of that officer.

BALT also asked the SAO to waive the costs required to reproduce the records sought in requests #2 and #3.

The SAO denied the request for the list of 305 officers in its entirety and did not respond to the fee waiver requests accompanying the other two inquiries. Instead, the SAO informed BALT that the estimated cost of production for the records in request #2 would be approximately $15,000 and would require over 438 hours of work, and the cost of production for the records in request #3 would be $3,000.

On March 2, 2020, BALT and Open Justice Baltimore[1] filed a complaint in the Circuit Court for Baltimore City against the SAO and Marilyn Mosby, acting in her official

---

[1] From the Open Justice Baltimore's website: "Open Justice Baltimore (OJB) develops opensource data projects to increase transparency of the Baltimore Police Department and Baltimore City officials. OJB aims to work with community organizations, lawyers, journalists, educators, and researchers to create tools for the benefit of an educated

capacity as State's Attorney for Baltimore City. On August 14, 2020, the State's Attorney filed a motion to dismiss, or alternatively for summary judgment. BALT opposed and moved for summary judgment itself.

The circuit court heard arguments on the clashing motions on October 26, 2020 and took the matter under advisement. In a written set of findings and an order dated December 4, 2020, the circuit court granted summary judgment in favor of the SAO and denied BALT's similar motion.

BALT noted this appeal, raising three questions for our review, which we have reproduced verbatim:

1. Is a prosecutor's "do not call" list a personnel record under the Public Information Act?

2. Does a prosecutor creating a list of officers who have general integrity exculpatory material against them, as a general practice of the office and not preemptive of any particular litigation, constitute attorney work-product?

3. Was Appellees' denial of a fee waiver request arbitrary and capricious when Appellees denied a self-evident public interest, would not discuss the matter with Appellants, and showed a lack of neutrality in their duty of consideration?

For the following reasons, we hold that the State's Attorney's motion for summary judgment was erroneously granted because the "do not call" list is not exempt from disclosure under the Maryland Public Information Act as a personnel record or as attorney work-product. The list is also not exempt from disclosure, despite the SAO classifying it

---

and empowered public." https://apmphila.wedid.it/partners/2020-open-justice-baltimore. https://bit.ly/3EiyO8b. (Last visited: September 14, 2021.)

as *Giglio*[2] or *Brady*[3] material.  Finally, we hold that the court erred in not finding that the SAO arbitrarily and capriciously denied both fee waiver requests.

## FACTUAL BACKGROUND

On December 3, 2019, State's Attorney Marilyn Mosby publicly informed members of the State Commission to Restore Trust in Policing[4] that her office maintained a list of 305 officers with what she described as "credibility issues."  Apparently, these officers had, in some way, compromised their credibility such that Ms. Mosby determined the officers' status "put them in jeopardy from testifying."  In its complaint, BALT noted that the existence of this "do not call" list was a major media topic given the public interest.[5]

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] The Commission to Restore Trust in Policing was created by the General Assembly during the 2018 session in the wake of the exposed corruption of the Baltimore City Police Department's Gun Trace Task Force.  Eight of the nine-member Gun Trace Task Force were convicted of federal racketeering charges. The officers' corruption included robbing city residents and suspected drug dealers while using police resources to further their criminal activities.  The Commission's charge was "to unravel the culture of corruption that allowed a task force of sworn police officers to run a criminal enterprise from within the Baltimore Police Department."  To that end, the General Assembly vested the Commission with broad authority, including the power to subpoena witnesses or documents and a duty to make its findings publicly known. Legislative authorization for the Commission ended on January 15, 2021.  *Commission to Restore Trust in Policing Begins Work, Maryland Matters, October 17, 2018.*  (Last visited: September 14, 2021). *https://www.marylandmatters.org/2018/10/17/commission-to-restore-trust-in-policing-begins-work/.*  *See Chapter 753, Acts of 2018.*

[5] At the forum, Ms. Mosby informed the attendees that her office "created an internal sort of notification system. We notify the police department whenever there is a sustained allegation of credibility issues or even an allegation that isn't sustained. So we will summarize whatever the issue may be, and then we provide that list to the police

After this revelation, BALT made three requests under the MPIA for the SAO to provide more information about the "do not call list." First, BALT sought a copy of the "do not call" list (or "the list"). Second, BALT sought information about investigations of City police officers that were closed during 2019, and any similar cases that had been open for over sixteen months. BALT requested a fee waiver. Finally, BALT requested records related to any criminal investigations into a specific police officer from the time he was hired by the City's police department to the date of the request. BALT, claiming that it was a tax-exempt, public interest organization, also requested a waiver of the costs the SAO asserted were necessary to compile the requested documents.

**BALT's First MPIA Request**

On December 6, 2019, BALT submitted its first MPIA request to the SAO's Chief of External Affairs seeking the "names, ranks, badge numbers, job assignments, and dates of hire of the individual officers" who were included on the list. Further, BALT requested "all relevant audio, video, dash cam, body warn cameras (*sic*), or other form of data" as well as any public documents that had been used to create the list. On December 20, 2019, BALT inquired about the status of the request and whether they could assist the SAO in locating the records. The SAO did not respond. BALT contacted the SAO on January 7, 2020 and informed them that it did not understand why the SAO was non-compliant and

---

department for them to determine what they're going to do with their employee ... There are hundreds of officers on that list." *See* Tim Prudente, *Baltimore State's Attorney Says She Has List of 'Hundreds of Officers' with Alleged Credibility Issues*, Balt. Sun (Oct. 18, 2019), https://www.baltimoresun.com/news/crime/bs-md-ci-cr-mosby-lists-hundreds-of-officers-20191018-cakqslar5rgujp2sc6knwsklpm-story.html.

4

that it was unaware if the SAO had requested an extension. BALT also asked about internal appeal procedures.

On January 9, 2020, Deputy State's Attorney Valda Ricks responded on behalf of the SAO by way of a letter denying BALT's request. In the letter, the SAO claimed that the requested material was exempt from disclosure because it fell under the "personnel record" exemption of the Maryland Code, General Provisions ("GP") Article, § 4-311(a). The SAO explained that this mandatory exemption applied because these records related to the "hiring, discipline, promotion, dismissal, or any other matter involving [the officer's] status as an employee." The SAO claimed that the information sought was privileged as both attorney work-product and as part of the SAO's deliberative process. Ms. Ricks also stated that the records could not be disclosed because disclosure would interfere with a "valid and proper law enforcement proceeding" under GP § 4-351(b)(1).[6]

---

[6] GP § 4-351 states:
(a) Subject to subsection (b) of this section, a custodian may deny inspection of:
    (1) records of investigations conducted by the Attorney General, a State's Attorney, a municipal or county attorney, a police department, or a sheriff;
    (2) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or
    (3) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a municipal or county attorney, a police department, a State or local correctional facility, or a sheriff.

(b) A custodian may deny inspection by a person in interest only to the extent that the inspection would:
    (1) interfere with a valid and proper law enforcement proceeding;
    (2) deprive another person of a right to a fair trial or an impartial adjudication;
    (3) constitute an unwarranted invasion of personal privacy;
    (4) disclose the identity of a confidential source;
    (5) disclose an investigative technique or procedure;
    (6) prejudice an investigation; or

BALT responded to the denial letter with a letter of its own, stating that the SAO maintained more than just personnel records and that "a blanket claim of interference with law enforcement proceedings" was not permissible under the MPIA. BALT also asked about the possible severing of any information the SAO deemed privileged and "whether all three-hundred and five officers were under active investigation." The SAO did not respond to BALT's letter.

### BALT's Second MPIA Request

On January 14, 2020, BALT filed a detailed second MPIA request seeking, essentially, the full investigatory files "into alleged criminal activity of officers of the Baltimore Police Department." Specifically, BALT requested all such files closed during the 2019 calendar year and any that had been open for more than sixteen months. Further, BALT requested a fee waiver, citing its status as a non-profit organization and that this information "was a matter of public concern and public safety."[7]

Having not received a response from the SAO after the prescribed ten-day response time found in GP § 4-203, BALT emailed the SAO on January 30, 2020 inquiring about

---

(7) endanger the life or physical safety of an individual.

In 2021, this section was amended with the passage of the Maryland Police Accountability Act of 2021 which permits the inspection of records relating to police misconduct. *See* Maryland Code Criminal Procedure Article § 1-203.

[7] Interestingly, the *Baltimore Sun* published several articles in 2019 and 2020 that discussed the importance of sharing the "do not call" list. *See* Justin Fenton, "*Public Defenders Want Prosecutor's List of Police Officers with Credibility Issues. Prosecutors Resist*," Balt. Sun (Feb. 11, 2020); Tim Prudente, *Baltimore State's Attorney Says She Has List of 'Hundreds of Officers' with Alleged Credibility Issues*, Balt. Sun (Oct. 18, 2019).

6

the status of its second request and whether assistance was needed. Ms. Ricks responded on behalf of the SAO on February 4, 2020. She explained that responding to the request would take approximately "438 hours of clerical and attorney time to locate, prepare, and reproduce the records. This also included required work-product redaction of statutorily privileged communications." Ms. Ricks estimated the total cost to be about $15,330.00 and attached a fee schedule. The fee schedule included a fee of 75.00/hour for attorneys and $15.00/hour for clerks. The SAO requested that BALT provide payment before it would begin processing the request.

BALT immediately emailed the SAO asking whether the SAO was going to redact portions of the submitted documents and if so, how long the production of the documents would take. BALT also wanted to confirm that the SAO was denying BALT's requested fee waiver. The SAO did not respond to this email nor did they respond to BALT's follow-up email sent on February 12, 2020.

**BALT's Third MPIA Request**

BALT submitted a third MPIA request to the SAO on January 31, 2020. Like the first request, this one sought information concerning all investigations "directed at potential or alleged criminal conduct" of one named City police officer that it believed the SAO had maintained since March 2017, including the charges that were filed against that officer in January 2020. Further, BALT requested "all open and closed investigations of officer misconduct" regarding that officer since the beginning of his employment with City police

7

department. BALT also relied on GP § 4-206(e)[8] to request a fee waiver based on BALT's status as a public interest, tax-exempt organization.

On February 11, 2020, Ms. Ricks denied BALT's third MPIA request citing GP § 4-351(a)(2) and GP § 4-351(b)(1)[9], positing that disclosing those records "would interfere with a valid and proper law enforcement proceeding." Regarding other SAO investigations of City police officers, Ricks informed BALT that a preliminary search revealed nothing, but that a more thorough search would require about forty hours of time and would cost about $3,000. The SAO did not address BALT's fee waiver in its request.

## The Circuit Court Proceedings

In each of its response letters, the SAO suggested that a hearing before the Circuit Court for Baltimore City would be an appropriate forum for BALT to challenge the SAO's rejection of BALT's requests. Acting on the SAO's suggestion, BALT and Open Justice Baltimore[10] filed suit in the circuit court on March 2, 2020. In the three count suit, BALT and Open Justice Baltimore alleged that the SAO had failed to reasonably comply with

---

[8] GP § 4-206(e) states:
The official custodian may waive a fee under this section if:
    (1) the applicant asks for a waiver; and
    (2)(i) the applicant is indigent and files an affidavit of indigency; or
    (ii) after consideration of the ability of the applicant to pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest.

[9] These provisions provide, in relevant part, that "a custodian may deny inspection of . . . an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose . . . only to the extent that the inspection would . . . interfere with a valid and proper law enforcement proceeding." Md. Code Ann. GP § 4-351.

[10] While both parties filed the complaint, BALT is the only appellant to this appeal.

8

three MPIA requests relying on "inapplicable and fictious (sic) exemptions and privileges," not assisting in the request, and imposing unreasonable fees and arbitrarily denying BALT's request for a fee waiver. Plaintiffs demanded the court order the SAO to comply with the MPIA requests and pay "nominal damages" and court costs.

The SAO moved to dismiss the complaint or in the alternative for summary judgment. In its accompanying memorandum, the SAO offered an affidavit from Ms. Ricks which addressed the SAO's assessments of BALT's fee waiver requests. In her affidavit, Ms. Ricks testified that disclosing the records would not contribute to the public's understanding of how the SAO operates, nor would disclosure be in the public interest. Additionally, the State noted that fulfilling BALT's requests would detract from the SAO's primary job function—"the pursuit of justice and the prosecution of crime in Baltimore City." Finally, the SAO explained that BALT bore the burden of establishing that disclosure was in the public interest.

After the October 26, 2020 hearing, State's Attorney Mosby emailed the presiding judge and opposing counsel, stating that she felt that her office was obliged to withhold the requested information because "the Court of Appeals has ruled that police records relating to investigations of misconduct by police officers are personnel records under the MPIA, and therefore cannot be disclosed." She further explained:

> This legal prohibition is the only reason we have not disclosed this information. In sum, I believe in transparency and have no philosophical objection to releasing information on police misconduct. It is simply the case that my office has been instructed that this would be illegal, and we are duty bound to obey the law. In the absence of such a legal prohibition, we would have been pleased to produce the requested records.

9

By way of a memorandum dated December 4, 2020, the circuit court detailed its findings of facts and conclusions of law. The court, relying on the Court of Appeals' holding in *Montgomery Cnty. Maryland v. Shropshire*, 420 Md. 362, 383 (2011), first, concluded that "internal affairs records of police officers constitute 'personnel records' within the meaning of the [M]PIA." The court reasoned that,

> [t]he list of officers and information used to compile the list sought in Plaintiffs' first request constitutes confidential internal affairs records protected by the mandatory exceptions provisions of GP § 4-311. The fact that the list of officers was compiled from confidential personnel information makes the list confidential.

Second, even though some of the list may have been created from non-personnel records, the court found that it need not address that issue because the SAO asserted that the list and related materials had been created in anticipation of litigation. In the court's view, "GP § 4-344 allows a custodian to deny inspection of any part of an [interagency] or interagency letter or memorandum." And because, the court reasoned, the SAO's primary function is prosecuting cases on behalf of the State, it [was] reasonable to conclude that the list of officers was compiled in anticipation of litigation." Further, the court found the list was useful in permitting the SAO to fulfill its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. U.S.*, 405 U.S. 150 (1972). Third, the court concluded that the "public interest exemption," found in GP § 4-343, meant that the SAO properly denied disclosure of all open investigations involving the named police officer. "Forcing the SAO to disclose an investigation of a criminal defendant just prior to trial could prejudice the State and the defendant and interfere with the defendant's ability to obtain a fair trial."

10

Finally, the circuit court assessed BALT's fee waiver request. Reviewing the SAO's denial of the waiver request through the lens of this Court's discussion of Freedom of Information Act ("FOIA") requests analogized to fee waiver cases, *see Action Committee for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540 (2016), the court assessed two factors: (1) whether the request was in the public interest,[11] and (2) whether the requestor had the ability to pay the fee. Given BALT's failure to produce this evidence or prove that the SAO's denial of the waiver was arbitrary or capricious, the court stated it was unable to conclude from the record that the SAO's denial of the fee waiver was arbitrary and capricious.

BALT filed a timely appeal. We will include other pertinent information later in the opinion.

**STANDARD OF REVIEW**

A motion for summary judgment may be filed by any party "on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Md. Rule 2-501(a). The non-moving party "must identify with particularity each material fact in genuine dispute and provide support for its contentions." *Educ. Testing Serv. v. Hildebrant*, 399 Md. 128, 139 (2007). The trial court may grant summary judgment in favor of the moving party "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered

---

[11] In this context, "public interest" means whether the FOIA requestor had the ability and intention to effectively convey or disseminate the requested information to the public. *Cause of Action v. FTC*, 799 F.3d 1108, 1117 (D.C. Cir. 2015).

11

is entitled to judgment as a matter of law." *Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Surety Co.*, 454 Md. 698, 704-05 (2017) (quoting Md. Rule 2-501(f)).

The issue of whether the trial court's grant of a summary judgment was proper is a question of law and is reviewed de novo. *Schneider*, 454 Md. at 705 (quoting *Tyler v. City of Coll. Park*, 415 Md. 475, 498 (2010)); *Gurbani v. Johns Hopkins Health Sys. Corp.*, 237 Md. App. 261, 289 (2018); *Hildebrant*, 399 Md. at 139. On appeal, this Court independently reviews "the same information from the record and determines the same issues of law as the trial court." *Miller v. Bay City Prop. Owners Ass'n, Inc.*, 393 Md. 620, 632 (2006). Specifically, regarding motions for summary judgment, we "independently review the record to determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." *Livesay v. Balt. Cnty.*, 348 Md. 1, 10 (2004); *Gurbani*, 237 Md. App. at 289 (citing *La Belle Epoque, LLC v. Old Europe Antique Manor, LLC*, 406 Md. 194, 209 (2008)). Where the record indicates "there was no such genuine dispute as to any material fact necessary to resolve the controversy as a matter of law, and it is shown that the movant is entitled to judgment, the entry of summary judgment is proper." *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 8 (1974). Furthermore, "it is well-established in Maryland that an appellate court ordinarily will consider only the grounds relied upon by the trial court in granting summary judgment." *Id.*; *see also Lovelace v. Anderson*, 366 Md. 690, 696 (2001); *PaineWebber v. East*, 363 Md. 408, 422 (2001).

On review of an MPIA dispute, the "facts necessary to the determination of a motion for summary judgment may be placed before the court by pleadings, affidavit, deposition,

12

answers to interrogatories, admission of facts, stipulations and concessions." *Action Comm. For Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540, 545 (2016) (quoting *Prince George's Cnty. v. The Washington Post Co.*, 149 Md. App. 289, 304 (2003)).

## DISCUSSION

The MPIA has created a "general presumption in favor of disclosure of government or public documents." *Kirwan v. The Diamondback*, 352 Md. 74, 80 (1998). "The provisions of the Public Information Act reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 73 (1998) (quoting *A.S. Abell Publ'g Co. v. Mezzanote*, 297 Md. 26, 32 (1983)); *see also* GP § 4-103(a) ("All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."). The Act, however, "highlights that its provisions shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection" but only to the extent there is no "unwarranted invasion of the privacy of a person in interest." GP § 4-103(b). Furthermore, the Court of Appeals has explained that the act "must be liberally constructed" to ensure that the Act's "broad remedial purpose" is met. *Kirwan*, 352 Md. at 81 (quoting *Mezzanote*, 297 Md. at 32).

BALT raises two narrow issues in this appeal, in addition to the fee waiver issue. The first is whether the "do not call" list may be classified as a personnel record, and thus exempt from disclosure under GP § 4-311. The second is whether the "do not call" list

13

qualifies as attorney work-product, making it exempt from disclosure under the MPIA. We examine each of these issues in turn.

I.  **The "Do Not Call" List Is Not Subject to the Personnel Records Exemption or the Investigatory Records Exemption**

   a.  **The Parties' Contentions**

BALT contends that the SAO cannot invoke the personnel records exemption found in GP § 4-311 to avoid disclosure of the "do not call" list, because the list does not contain any employment information or records from another agency. BALT maintains the list is not an employment list, since the SAO created the list, not the City police department, and the SAO does not maintain supervisory authority over the officers named in the list. BALT further contends that if the requested supporting documents—documents that may inform why a particular officer is on the "do not call" list—are in fact exempt, then disclosure may be severed so that the list of officer names is produced without the supporting documents.

The SAO argues that the list is exempt from disclosure because it was created using the officers' personnel records. The SAO contends that where privacy issues are concerned, the MPIA's scope should be read narrowly. The list was developed using information from confidential internal affairs records, which are protected under the mandatory exemptions in the MPIA, and so the circuit court's judgment should be affirmed.

   b.  **Analysis**

The "do not call" list contains the names of 305 City police officers deemed to have "questionable integrity." BALT argues that the list represents over ten percent of the Baltimore Police Department's officers and that keeping the list secret only breeds the

14

community's further distrust of the police. The SAO has sought to prevent disclosure of this list by invoking both the personnel records exemption and the investigatory records exemption of the MPIA.

1.  Personnel Records Exemption

The MPIA contains a mandatory exemption that prohibits the disclosure "of a personnel record of an individual, including an application, performance rating, or scholastic achievement information." GP § 4-311(a). The Court of Appeals explained in *Kirwan* that these categories were unlikely to be exhaustive and instead represent a "legislative intent that 'personnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job." *Kirwan*, 352 Md. at 84. Further, because the MPIA's overarching aim is to "allow access to public records," the General Assembly likely did not intend "that any record identifying an employee would be exempt from disclosure as a personnel record[,]" but rather that it "likely intended that the term 'personnel records' would retain its common sense meaning." *Id.* The personnel records exemption aims "to preserve the privacy of personal information about a public employee that is accumulated during [their] employment." *Prince George's Cnty.*, 149 Md. App. at 323 (quoting 78 Op. Att'y Gen. 291, 293 (1993)).

In *Prince George's County*, the Washington Post requested records from the Prince George's Police Department's Human Relations Commission. 149 Md. App. at 299–300. Prince George's County argued that the records were exempt from disclosure as both personnel records and investigatory records. The Post responded that they were requesting only documents from closed cases that had been the subject of public hearings; therefore,

15

neither exemption applied. *Id.* at 328. This Court held that these documents were not exempt from disclosure because "the documents at issue, which relate to the actions of an individual, were produced by an agency with no supervisory authority over the individual." *Id.* at 331.

Here, the trial court concluded that BALT's request for the list of the officers and the associated information was a request for confidential internal affairs records. So, the trial court concluded, "these records [are] protected by the mandatory exception provisions of GP § 4-311." We disagree.

An agency cannot claim a personnel records exemption under the MPIA unless (1) the agency has supervisory authority both over the records and the person who is the subject of the records, *Prince George's Cnty.*, 149 Md. App. at 331; and (2) the records contain what would be considered "personnel issues," such as a performance rating, or, generally, "an employee's ability to perform a job." *Kirwan*, 352 Md. 83-84. The record suggests that the SAO has generated the list, rather than the City's police department. We understand from the State's Attorney's motion for summary judgment that the list was created from City police department's Internal Affairs documents. Critically though, the internal affairs documentation—whatever an officer did to call into question their credibility—is not part of the list. Only the names of the officers the SAO has deemed compromised appear on the list. Consequently, based on our review of the record, this list does not contain the personnel record of an individual, such as "an application, performance rating, or scholastic achievement information," or other information directly related to an officer's job performance. GP § 4-311(a). Instead, this list contains the names

16

of the officers that the SAO has designated as having "questionable integrity." Consequently, the list is not a personnel record as defined in GP § 4-311(a), although we realize that it might well have been created utilizing personnel records.

Supporting our conclusion is the Court of Appeals' rationale in *Kirwan*. There, the Court concluded that the legislature likely intended to ensure that personnel records referred to those records that "directly pertain[ed] to employment and an employee's ability to perform a job." 352 Md. at 84. The legislature did not intend that "any record identifying an employee would be exempt from disclosure as a personnel record." *Id*.; *see also Governor v. Washington Post*, 360 Md. 520, 548 (2000) (explaining that "the fact that the Governor or a staff member telephoned or met with an identified individual would not be a 'personnel record' under any 'commonly understood meaning of the term'"). Simply because an officer's name appears on a list generated by the SAO does not mean that it is now a personnel record, based on the "commonly understood meaning of the term." *Kirwan*, 352 Md. 83-88. It seems to us that the SAO uses the list as a tool to ensure that prosecutions are not compromised by the testimony of officers whose veracity is questioned.

Critically, while the list does "relate to the actions of an individual," it was created by "an agency with no supervisory authority over the individual." *Prince George's County*, 149 Md. App. at 331.[12] We think this an important distinction. We could easily envision

_____

[12] During the 2021 session, the General Assembly overrode Governor Hogan's veto and enacted Senate Bill 178 ("Anton's Law"), 2021 Md. Laws, ch. 62. *This bill was part of a package of police reform legislation passed during the 2021 session. The new law, scheduled to go into effect on October 1, 2021,* removes investigative records into police

a comparable "do not call" list created and maintained by the City's police department, but that is not the case here. The SAO created this list. That office has no supervisory authority over individual police officers whose names appear on the list.

That said, the supporting documentation that BALT originally requested with the "do not call" list may fall under the personnel records exception because the disclosure of those records seemingly would encompass records maintained by the City police department detailing the investigation involving individual officers. As we discuss below with the regard to internal affairs records, that documentation may be severed from disclosure of the "do not call" list names.

---

misconduct from the ambit of GP § 4-311 and instead classifies them as investigatory records subject to discretionary withholding under GP § 4-351. This means that a custodian may deny inspection if disclosure would be "contrary to the public interest."

The one exception to the new law is that records of "technical infractions" are still considered personnel records subject to mandatory withholding under GP § 4-311. A "technical infraction" is one that is a "minor rule violation" solely related to enforcement of administrative rules; it does not involve an interaction between the officer and a member of the public, does not relate to investigative, enforcement, training, supervision, or reporting responsibilities, and "is not otherwise a matter of public concern."

At oral argument, the Assistant Attorney General representing the SAO seemed to suggest that in light of the new law, if BALT were to refile its MPIA request on or after October 1, 2021, the request might receive a more favorable review. Whether this is true or not remains to be seen. It seems apparent that under the new law, the SAO could no longer claim a personnel records exemption for some or all of the items BALT has requested. But as we have analyzed the statute and the relevant appellate authority, the SAO could not have legitimately made such a claim anyway about the "do not call" list. Further, under the new law the SAO could claim that disclosure would not be in the public interest. Such a position would be contrary to what the circuit court found here below, and what we hold, as discussed, later in this opinion.

18

## 2. Use of Internal Affairs Records

The SAO also argues that the "do not call" list cannot be disclosed because it was created using confidential internal affairs records which are considered personnel records. *See Baltimore City Police Dep't v. State*, 158 Md. App. 274, 282–83 (2004). As with the SAO's argument regarding personnel records, simply because the SAO might have used internal affairs records in deciding to place an officer's name on the list, does not mean that it cannot be disclosed. The MPIA "requires agencies to utilize the principle of severability in responding to requests for public records." *Cranford v. Montgomery Cnty.*, 300 Md. 759, 774 (1984). In complying with BALT's request, the SAO could have served the purposes of the MPIA while maintaining confidentiality by redacting or "severing" any information from the documents that might be considered confidential.

We also note that in *Prince George's County*, the Washington Post requested the Prince George's County Police Department furnish them with the full names of the officers, their ranks, badge numbers, job assignments, and dates of hire. 149 Md. App. at 299–300. BALT has made this same request, but of the SAO, not the Baltimore City Police Department. BALT, however, is also requesting "any and all other documents and information attached and composing this list," "any and all relevant audio, video, dash cam, body warn *(sic)* cameras, or other form of data included in this list, composing in this list, creating this list or compiling this list" as well as "any and all public documents that led to the creation of this list, including public documents that led to the identification of the approximate 305 officers on the mentioned list." As in *Prince George's County* where the county's "blanket denial of the request" was "too broad" when considering that "the

19

officers' full name, rank, badge number and date of hire would ordinarily be disclosed and the fact that this information is, in many instances, included in County press releases," 149 Md. App. at 327, here, we too find that the SAO's reliance on the fact that the list was made, in part, using internal affairs records to be unpersuasive. We hold that the blanket denial of the list citing the mandatory personnel records exemption is similarly inapplicable here. The trial court erred in restricting this disclosure.

### 3. Investigatory Records

Under the MPIA, a custodian may deny access to certain investigations under one relevant subsection. Namely, those investigations "conducted by the Attorney General, a State's Attorney, a municipal or county attorney, a police department, or a sheriff" for a "law enforcement, judicial, correctional, or prosecution purpose." GP § 4-351(a)(1). We also note that under subsection (2), a custodian may withhold "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose." *Id*. § 4-351(a)(2). However, the custodian may only deny access to an interested person "to the extent that the inspection would:

(1) Interfere with a valid and proper law enforcement proceeding;
(2) Deprive another person of a right to a fair trial or an impartial adjudication;
(3) Constitute an unwarranted invasion of personal privacy
(4) Disclose the identity of a confidential source
(5) Disclose an investigative technique or procedure;
(6) Prejudice an investigation; or
(7) Endanger the life and physical safety of an individual."

*Id.* at (b).

The Court of Appeals has read GP § 4-351(a)(1) and (2) separately. Consistent with the plain language of subsection (a)(1), the Court has held that for a record compiled by

20

one of the agencies enumerated in that subsection, such as the SAO, there is no requirement to prove a law enforcement purpose, since it is presumed. *Superintendent, Maryland State Police v. Henschen*, 279 Md. 468, 475 (1977). However, under subsection (a)(2) a law enforcement purpose must be proved when records are compiled for the purposes listed in that subsection. "It is only with respect to the second category that there is an express requirement that the records be compiled for law enforcement or prosecution purposes." *Id*.

In this case, the SAO declined to disclose the names of the officers on the "do not call list," by asserting that the disclosure would interfere "with a valid and proper law enforcement proceeding under GP § 4-351(b)(1)." In response, BALT asked whether all 305 officers were under investigation, to which they received no reply. In not responding, the SAO failed to "demonstrate that it legitimately was in the process of or initiating a specific relevant investigative proceeding." *Prince George's Cnty.*, 149 Md. App. at 325 (quoting *Fioretti*, 351 Md. at 82).

There is a strong presumption in favor of disclosure, such that exemptions from disclosures "must be applied narrowly." *Blythe v. State*, 161 Md. App. 492, 519 (2005). A custodian cannot invoke a blanket exemption "to shield an entire file if the shielding of only a part of the file would suffice to serve the purpose of the exemption." *Id*; *Cranford v. Montgomery Cnty.*, 300 Md. 759, 777 (1984) (explaining that the General Assembly "did not intend for custodians broadly to claim exemptions"). Rather the custodian must "permit inspection of any part of the record that is subject to inspection and is reasonably severable." *Blythe*, 161 Md. App. at 519.

Based on the foregoing, we conclude that the trial court erred in prohibiting disclosure given that the SAO invoked a blanket exemption as though all 305 officers were under investigation. That simply was not demonstrated here. And even if the SAO had shown that it was actively investigating an individual police officer, the SAO has not demonstrated how they could have complied with the MPIA request by shielding that individual officer's name from the list.

## II.     The "Do Not Call" List is Not Attorney Work-Product

### a.  The Parties' Contentions

BALT contends that the privilege only protects an attorney's work product prepared in anticipation of specific litigation; it is not a blanket protection against the production of all work produced where litigation is not necessarily anticipated. BALT posits that the SAO uses the "do not call" list as "a general business practice." Further, BALT argues that the SAO waived the work-product privilege in this case, because in the SAO's last communication to the court, State's Attorney Mosby's post-hearing email, she retracted her office's invocation of the privilege, saying that her office would not disclose because the information sought was derived from personnel records. BALT notes that the court, nonetheless, applied the work-product privilege to prevent disclosure.

The SAO contends that the circuit court correctly ruled that the list was protected as attorney work-product. They argue that the list helps City prosecutors know which officers have questionable veracity, which in turn helps the prosecutors comply with their *Brady* and *Giglio* obligations in specific cases. Thus, the State concludes, the list was created and is maintained in anticipation of litigation. Further, the State claims that the list involves

22

the mental impressions, processes, and opinions of the attorneys who created the list, and such impressions are protected from disclosure.

The SAO also maintains that it did not waive its attorney work-product privilege claim because the State's Attorney's email was not included in the docketed list of exhibits, nor was it mentioned in the court's memorandum opinion. Finally, the SAO contends that because BALT did not raise the issue of waiver with the trial court, it cannot now raise the issue on appeal.

### b. Attorney Work-Product Doctrine

The attorney work-product doctrine protects from disclosure documents "produced in anticipation of litigation or in rendition of legal services." *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 401 (1998). "[T]he touchstone of the work product doctrine [is] that the materials must have been created in preparation for trial." *Id.* at 407. It is not enough that litigation may eventually occur, but rather, "there must have been a particular, identifiable claim or impending litigation" to invoke the protections of the work product doctrine. *Id.* at 411. Even where a party may "find[] itself in circumstances that may lead to litigation" that "does not render all documents prepared with regard to those circumstances protected work product." *Id.* Materials created in the ordinary course of business are not protected. *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995). The "primary motivating purpose behind the creation of the materials must be as an aid in . . . future litigation." *Id.*

### c. Analysis

Preliminarily, we address BALT's argument that the SAO has waived the attorney work-product privilege. BALT did not raise the issue of waiver at the hearing below in the circuit court. As a consequence, BALT cannot now raise this issue before this Court on appeal. Rule 8-131. Because the issue of waiver is not preserved, we will analyze whether the work-product doctrine applies to the SAO's "do not call" list.

The trial court concluded that the work-product doctrine applied to the "do not call" list and related materials because, in the court's view, the SAO is always facing the prospect of litigation. The court read broadly the Court of Appeals' holding in *E.I. du Pont de Nemours*, regarding what documents qualify as attorney work-product. In its written findings and order, the circuit court, quoting the Court of Appeals, said that "the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 351 Md. at 411 (quoting 8 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024, at 343–46 (1994)). The circuit court reasoned that because the nature of the SAO's work consistently imposes upon them "the prospect of litigation," the list was attorney work-product.

We decline to adopt this expansive reading of the test in *E.I. du Pont de Nemours*. While SAO generated work is protected when prepared for an anticipated trial, the mere fact that the SAO is in the business of routinely engaging in litigation, and a document generated by their office might be litigated in a prosecution, that fact alone "does not render

all documents prepared with regard to those circumstances protected work product." *E.I. du Pont de Nemours*, 351 Md. at 411. Our holding in this regard is limited to the "do not call" list, and not the related materials, for the reasons we explain.

This Court's prior decision in *Prince George's County* supports this conclusion. There, the Washington Post newspaper sought police commanders' "information reports," which were circulated to the various police departments as a means of managing the police force. We explained that "ordinarily, memoranda consisting only of compiled factual material" is disclosable. *Prince George's Cnty.*, 149 Md. App. at 319. Here, BALT argues that the list is simply a fact-based memorandum produced by the SAO which is then circulated throughout the SAO's departments. The SAO essentially confirmed this when it explained that the purpose of the list is not to prepare for litigation, but instead to "help prosecutors avoid bringing cases built on evidence from officers who are likely to be challenged in court." We conclude that the list is not, in the general sense of the term, an opinion, but rather "compiled factual material" used to ensure that the prosecutors have full knowledge of which officers face problems with their veracity. *Id*. To be sure, we understand that the prosecutors evaluated which officers should be prohibited from testifying, but that overall conclusion was already known to the public at the December 3, 2019 forum when State's Attorney Mosby made her announcement. Furthermore, to the extent a prosecutor's comments, impressions, or opinions about a specific officer appeared on the list, then those comments could be redacted so that the SAO could still comply with the MPIA request.

We determine that the "do not call" list was created *regardless* of whether any specific officer was going to testify in a particular case. The officers whose names appear on the list may never have to testify, but, significantly, their names remain on the list because their integrity is in question. From our review of the record, we conclude that even though the SAO constantly faces the prospect of litigation, the "do not call" list was not necessarily created in response to the prospect of litigation. Rather, the list was created for the purpose of alerting prosecutors to the fact that a cohort of officers have questionable reputations and putting them on the witness stand to testify, or to base an investigation on a search warrant submitted by one of these officers, to cite two examples, would potentially jeopardize a prosecution. Consequently, we conclude that the "do not call" was not created in anticipation of litigation, but instead is used more as a tool that the SAO may use to assess the strength of a prosecution.

Furthermore, in making an MPIA request, the party asserting the privilege—here the SAO—must "identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product exemption applies to all portions of the document." *Prince George's Cnty.*, 149 Md. App. at 335 (internal citation omitted). If, on remand, the SAO again invokes the attorney work-product exemption, then the SAO must identify the specific case(s) for which the list was created to explain why the exemption applies, using a Vaughn Index, for example.

Finally, we recognize that we are not assessing a discovery issue, but instead a public information request. If this were a discovery issue, we well might have reached a different conclusion regarding the applicability of the attorney work-product doctrine. Our

26

analysis has focused on whether the list, created under these circumstances, may be called "attorney work-product" for the purposes of summary judgment. We conclude that the trial court's reading of *E.I. du Pont de Nemours* completely protected the "do not call" list from being disclosed to BALT. This seems to us to be a very broad definition of attorney work-product. That being said, whether a document may be classified as "attorney work-product" should be reviewed on a case-by-case basis. Consequently, on remand, we reiterate that if the SAO asserts the exemption in the context of an MPIA request, it must explain why the document falls under the protection of the attorney work-product privilege. The court should then determine the validity of the privilege, perhaps undertaking an *in camera* review of any relevant documents, to determine whether the MPIA request may be honored if the privileged information was shielded or severed.

### i. *Giglio and Brady*

We also reject the SAO's argument, stressed at oral argument, that because the "do not call" list helps it comply with its *Giglio* and *Brady* obligations, the list is exempt from an MPIA request as work-product. The fact that the names of police officers with questionable integrity could possibly be exculpatory to a defendant in a particular SAO prosecution—thus constituting *Brady* material in that instance—does not transform a list of *all* such affected police officers into work-product. Echoing the reasons discussed above, because the "do not call" list was not compiled in anticipation of litigation, it makes little difference that some of that information might be relevant in the course of a future prosecution.

27

As a final point, it is difficult to grasp the application of a work-product defense to a category of material that must be turned over in litigation if it is in fact *Brady* material, as the SAO contends. The MPIA allows a custodian to deny inspection "of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit." GP § 4-344. This exemption cited by the trial court does not apply because if an officer's identity and background was deemed *Brady* or *Giglio* material in a particular case, the prosecution would be constitutionally required to disclose that information to the defendant.

### III. The SAO's Denial of Both of BALT's Fee Waiver Requests was Arbitrary and Capricious.

#### a. The Parties' Contentions

BALT contends that the SAO's denial of the fee waivers for its second and third MPIA requests were arbitrary and capricious. BALT argues that the SAO erroneously claimed that the requests were not in the public interest, did not discuss the release of the list with BALT, and lacked neutrality in considering whether to release the list.

The SAO counters that its denials were not arbitrary. They argue that an agency is not required to inform a requester of the reasons for denial so long as the reviewing court is provided with those reasons. The SAO contends it supplied the circuit court with its reason for the waiver denials by way of: (1) an affidavit from the Deputy State's Attorney, Ms. Ricks, who testified that she did not believe either request was in the public interest, and (2) a letter the SAO sent BALT explaining its denial for a subsequent unrelated request. In this letter, the SAO said that the release of the information BALT requested would not

28

improve the public's understanding of the operations of the SAO. Further, the SAO believed that BALT was able to pay for copies of the documents requested.

### b. Fee Waiver Standard of Review

MPIA fee waiver requests are addressed in GP §4-206(e), which provides, in relevant part:

> The official custodian may waive a fee under this section if:
>   (1) the applicant asks for a waiver; and
>   (2) …
>       (ii) after consideration of the ability of the applicant to pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest.

A government agency's denial of a fee waiver may not be arbitrary and capricious. *Action Comm. for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540, 559 (2016). The reviewing court assesses the actual decision-making process of the agency—not merely the bases it could rely on in deciding to deny the waiver. *Id.* at 563. However, the reviewing court is not limited to the reasons the agency has advanced; it may consider other factors that reveal the agency's decision-making process, such as "pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions." *Chevy Chase*, 229 Md. App. at 559 (quoting *Prince George's Cnty.*, 149 Md. App. at 304).

This Court has recognized that "GP § 4-206 does not set out any requirement for a custodian's response to a waiver request." *Id.* at 561. Thus, the agency does not necessarily need to communicate its reasons for denial to the requestor; the denial may still be upheld on appeal if facts generated by pleadings, affidavits, and other documents provide the court with "sufficient information . . . to satisfy itself that the custodian's decision was not

29

arbitrary or capricious." *Id.* at 561–62 (citing *City of Balt. v. Burke*, 67 Md. App. 147 (1986)).

Our research has uncovered only two Maryland cases that have reviewed an agency's fee waiver determination under the MPIA. In the first case, *City of Balt. v. Burke*, 67 Md. App. 147 (1986), we held the denial of a fee waiver was arbitrary and capricious. There, we found the City's only considerations for denying the waiver were the expense to the City in fulfilling the request ("without trying to find ways to minimize the expense, such as allowing the appellee to view the documents in person and copy only what [they] deemed important") and the perceived ability of the requestor to pay. 67 Md. App. at 157. We concluded the City acted arbitrarily when it failed to consider any other "relevant factors." *Id.*

The more recent case is *Action Committee for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540 (2016). There, we held the Town of Chevy Chase's denial of the requestor's fee waiver was arbitrary and capricious. *Id.* 563–64. In reaching this conclusion, first, we recognized the requirement that the agency establish its actual considerations for the court. We concluded that "[t]he Town did this by setting out its reasoning in its memorandum in support of its motion for summary judgment." *Id.* at 563. We then, however, observed from the memorandum that the Town's predominant basis for denial was the requestor's previous criticism of the Town. *Id.* 563–64. We concluded this was a First Amendment violation and that "[a] decision based on an unconstitutional consideration is clearly arbitrary and capricious." *Id.* at 654.

30

In *Chevy Chase*, this Court also cited an opinion by the Attorney General discussing MPIA fee waivers and its guidance that "the broad term 'public interest' does not permit a precise listing of relevant factors." *Chevy Chase*, 229 Md. App. at 557 (quoting 81 Opinions of the Attorney General 154, 3 (1996)). We nonetheless noted examples of factors the Attorney General listed that could be useful to justify a fee waiver if doing so were in the public interest, "such as whether disclosure of records will shed light on a 'public controversy about official actions,' or on 'an agency's performance of its public duties.'" *Id.* at 557. We also referenced the MPIA Manual—a document drafted and updated by the Attorney General—"designed to be a resource for a range of users, from members of the public and the media who request information, to the government officials who have the responsibility to implement the Act's requirements." MPIA Manual, preface. The manual provides that waiver is favored "when a requestor seeks information for a public purpose, rather than a narrow personal or commercial interest, because a public purpose justifies the expenditure of public funds to comply with the request." *Chevy Chase*, 229 Md. App. at 556–57 (quoting MPIA Manual at 7-3).

Finally, we noted the MPIA Manual provides that "an official custodian may also find it helpful to look at case law interpreting the comparable FOIA provision, 5 U.S.C. § 552(a)(4)(A)" in determining what factors may be relevant for waiver consideration. *Id.* at 557 (quoting MPIA Manual at 7-3). The fee waiver provision under FOIA provides that waiver is appropriate "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of

31

the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

Although not discussed in *Chevy Chase*, the MPIA Manual also cites several FOIA cases where the U.S. District Court for the District of Columbia and the U.S. Court of Appeals for the D.C. Circuit noted the fee waiver requester must specify the public interest served and how the requester would disseminate the information to the public. MPIA Manual at 7-8 (citing *Physician's Comm. For Responsible Med. v. Dep't of Health & Human Servs.*, 480 F. Supp. 2d 119, 123 (D.D.C. 2007); *Cause of Action v. FTC*, 799 F.3d 1108, 1111 (D.C. Cir. 2015); *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988)).

### c. Analysis

The trial court granted summary judgment for the SAO on the ground that the SAO's denial of the fee waiver was not arbitrary and capricious. The circuit court reasoned that because the record lacked evidence from BALT regarding its inability to pay, as well as any indication of how BALT would disseminate the requested information, the SAO properly denied the fee waiver requests.

From our review of the case law, we find it necessary to take a slightly different approach in our analysis. We think the first step is to determine whether there were sufficient facts before the circuit court to determine what considerations went into the SAO's decision to deny both fee waiver requests. If that record is sufficiently developed, we next ask whether those considerations include BALT's ability to pay, and any other relevant factors that show whether the disclosure of the requested material would be in the public interest.

32

We are mindful that no single "relevant" factor is required. We point out that the factors that the Attorney General said that had been relied on in FOIA fee waiver assessments—including how the requester will disseminate the information—are merely examples of considerations that may be relevant but are not mandatory. We hasten to add, that even if such considerations are required under FOIA, they are not statutorily required under the MPIA. The "relevant factors" to be assessed will vary with the context of each request. Finally, we keep in mind that the custodian's considerations cannot consist exclusively of what the expense to the agency would be and the ability of the requester to pay for the requested information.

### i. SAO's considerations in the record

The SAO's considerations for denying the fee waiver requests are established in the SAO's motion for summary judgment and an accompanying affidavit, as well as a letter the SAO delivered to BALT explaining its denial of another fee waiver request not at issue in this case.

In its motion for summary judgment, the SAO provided three specific reasons for denying BALT's two fee waiver requests: (1) it believed BALT could pay for the requested records; (2) it did "not believe the requested disclosures would contribute significantly to the public's understanding of government operations, namely the operations of the State's Attorney," and (3) the SAO did "not know how the fee waiver will benefit the public as the resources needed to respond to this request (438 hours) reduce the ability of the members of the State's Attorney to handle their primary job functions—the pursuit of

33

justice and the prosecution of crime in Baltimore City."[13] The SAO also provided an affidavit from Ms. Ricks regarding her decision not to waive the fees for BALT's second and third MPIA requests, which stated she "determined the requested information was not likely to contribute to the public's understanding of the operations of the State's Attorney or that the any *(sic)* contribution to the public's understanding would be significant." Finally, Ms. Ricks' affidavit stated that the reasons provided in a July 27, 2020 letter to BALT regarding a separate fee waiver denial not at issue in the instant case "are the same reasons the fee waivers were denied in the January requests."

We digress to discuss the SAO's July 27, 2020 letter to better understand the SAO's reasoning for denying BALT's two January 2020 MPIA fee waiver requests. The July 27 letter was in response to BALT's MPIA requests (including another fee waiver request) that were submitted on July 8 and July 22, 2020. Those requests sought records relating to (1) all investigations of one named City police officer for actions occurring on May 29, 2020, as well as (2) all investigations of any City police department personnel for actions occurring on that same date. Neither of these requests were the subjects of the MPIA requests at issue in this case.

Significantly, unlike its previous responses to BALT, the SAO's July 27 letter included an explanation for its denial of a fee waiver. In the letter, the SAO acknowledged that BALT's ability to pay was "one factor in the analysis," and that because BALT is a

---

[13] The 438 hours comes only from the January 14 MPIA request for all criminal investigations of BPD officers for use of force closed during the 2019 year.

fiscally sponsored project of Fusion Partnerships,[14] which earned over $6 million in revenues in 2018, "no one could doubt [BALT's] ability to pay."

The SAO also outlined the FOIA factors referenced by the Maryland Attorney General for assessing whether the requested disclosure met the "governmental operations" portion of the FOIA standard. Based on its understanding of the FOIA factors, the SAO concluded that although there was public interest in the records, BALT did not demonstrate how the information would contribute to the public's understanding of the operations of the SAO. The SAO further stated as grounds: (1) it had already published a six-page letter outlining its rationale for the use of force incident that occurred on May 29, 2020; (2) there had been extensive local and national news coverage of the event; and (3) that City Police Department had already released footage of the incident from an officer's Body Worn Camera that had gone viral.

The SAO then reiterated that its records about the particular officer did not "concern identifiable operations or activities of [the SAO]" and were not "meaningfully informative about government operations or activities," such that they would contribute to increased public understanding of those operations. The SAO stated that the burden of demonstrating

---

[14] Founded in 1998, Fusion Partnerships seeks to bring about social change in Baltimore "[t]hrough collaborative action, including fiscal sponsorship, facilitation, and community grantmaking." "Fusion's vision is to create a Baltimore where everyone has equitable access to resources and opportunities. We serve as an inclusive solution that protects and nurtures small innovative organizations and initiatives. Our platform amplifies the voices of grassroots leaders, recognizes and claims their value, and refines their vision. Through our work, a larger and more diverse pool of grassroots community leaders can contribute and participate in solutions for social change." https://www.fusiongroup.org/index.php/about-us. (Last visited: September 21, 2021). https://bit.ly/3Athr23.

a public interest connection was on the requester and concluded that because "this burden has not been met, a fee waiver under the particular facts and circumstances of this case is not in the public interest."

Because, as the SAO's July 27, 2020 letter correctly implies, each fee waiver request is to be assessed on a "case-by-case basis," MPIA manual, 7-6 (citing *Chevy Chase*, 229 Md. App. at 561–63), we consider both of BALT's requests in turn to determine whether the information outlined in the July 27 letter gave the circuit court "sufficient information . . . to satisfy itself that the custodian's decision was not arbitrary or capricious." *Chevy Chase*, 229 Md. App. at 561–62 (citing *Burke*, 67 Md. App. 147).

### 1. The January 14 Fee Waiver Request

As previously discussed, BALT's second MPIA request, made on January 14, 2020, requested the full investigatory files into alleged criminal activity, including the use of force, of any City officer, that was closed during the calendar year 2019. Except for a limited portion of the July 27 letter, the SAO's considerations for denying this fee waiver request can be reasonably gleaned only from its motion for summary judgment and accompanying affidavit.

We start by noting that in the July 27 letter, the SAO states that information concerning the officer involved in the May 29, 2020 use of force incident had already been made widely available to the public. While probably true, that bears no clear-cut connection to BALT's January 14 request for any criminal investigatory records into *any and all* City officers that were closed *in 2019*.

36

Aside from the July 27 letter's reiteration that it believed BALT could pay for copies of the requested information, the SAO offers only one other justification for the January 14 fee waiver denial: that the SAO's records pertaining to the particular officer identified in the July requests did not "concern identifiable operations or activities of [the SAO]" and were not "meaningfully informative about government operations or activities," such that they would not contribute to increased public understanding of those operations. Of course, because the January 14 request sought records relating to all City police officers who were the subject of criminal investigations closed in 2019, rather than just one named officer, application of this reasoning requires some analogizing. As far as we can surmise, the SAO might have meant for the court to infer that if investigatory records of a single officer do not concern activities of the SAO, as asserted in the July 27 letter, records of multiple officers would fare no better.

We decline, however, to spend much time speculating on whether this reasoning should apply to the January 14 request, since we conclude that this rationale is an arbitrary basis for denying a fee waiver. We fail to see how the records of the SAO's criminal investigations of City police officers do not impact or concern the SAO's operations. The records would surely contain some insight into the activities of City police officers and would indicate whether a certain officer's actions were proper.

And even if the records relating to the one officer inquired about in July for whatever reason did not shed light on the operations of the SAO, it would beggar belief that this would also be true of all of the records that would fall under the January 14 request. Without additional information in the record to sustain the SAO's denial we conclude that

37

the denial was arbitrary. This Court is not required to search the record on appeal for facts to support a party's position. *Ruffin Hotel Corp. of Maryland v. Gasper*, 418 Md. 594, 618 (2011). *Boston Sci. Corp. v. Mirowski Family Ventures, LLC*, 227 Md. App. 177, 194 (2016) (We are not "expected to delve through the record to unearth factual support favorable to [the appellee]") (quoting *Rollins v. Capital Plaza Assocs.*, L.P., 181 Md. App. 188, 201 (2008)).

Further, the "operations or activities" assessment the SAO relied on derives from the language of the fee waiver provision under FOIA. 5 U.S.C. § 552(a)(4)(A)(iii) (providing waiver is appropriate "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government . . ."). Although the SAO did not err in employing this factor, the Maryland Attorney General's guidance for assessing public interest under the MPIA includes an additional inquiry that may satisfy the public interest factor: "whether disclosure of records will shed light on 'a public controversy about official actions.'" *Chevy Chase*, 229 Md. App. at 557 (quoting 81 Opinions of the Attorney General 154, 3 (1996)). We find this inquiry particularly germane in the context of a request seeking criminal investigatory records of City police officers, including those concerning use of force. Considering the well-documented public controversy surrounding use of force by City police officers, which was the motivation for BALT's requests, at least some consideration should have been given to whether disclosure of these records would inform the public about this subject. Indeed, the circuit court made that finding: "Unquestionably, the investigatory records of City police officers charged with misconduct relate to a matter of

38

genuine public concern." Even if the SAO may have concluded a fee waiver was not in the public interest for some other reason, it still should have considered how the disclosure of the requested records may have aided the public's understanding of how the SAO was addressing allegations of police misconduct given the history of such allegations in the City and nationwide over the last half dozen years.

The SAO established that it considered BALT's ability to pay and the burden on the SAO in fulfilling the request (438 working hours). Although BALT's ability to pay is one factor that the SAO could assess, *Burke* made clear a denial is arbitrary and capricious when it is made solely based on expense to the agency and the ability of the requester to pay. *Burke*, 67 Md. App. at 157. Consideration of other "relevant factors" must also be made. *Id.*

In the absence of consideration of any other relevant factors, including, for example, the heightened controversy surrounding City officers' use of force, this collection of considerations is not enough for the SAO's denial to withstand scrutiny. We, therefore, hold that the SAO's denial of the January 14 fee waiver request was arbitrary and capricious.

### 2. January 31 Fee Waiver Request

BALT's third MPIA request, made on January 31, 2020, sought criminal investigatory files of a specific City police officer from 1992 to the date of the request and stated that the records should include those related to charges filed on January 30, 2020. We reject the SAO's rationale for denying the January 31 fee waiver request based on our analysis of the January 14 denial.

First, with regard to BALT's ability to pay, the SAO's only stated estimate was 438 hours. But, as discussed, that was the SAO's estimate for fulfilling the January 14 request, not the January 31 request. Regardless, the SAO needed to assess other relevant factors outside of BALT's ability to pay and the SAO's burden to produce the information.

Second, the SAO "did not believe" the disclosures would significantly contribute to the public's understanding of the operations of the SAO. For the same reasons we discussed in analyzing the January 14 fee waiver assessment, we reject this rationale as well. The rationale provided in the July 27 letter—that the records requested do not concern identifiable operations or activities of the State's Attorney—is, as we have discussed, difficult to square and the SAO provides no specifics from which we can make an assessment. Again, as we discussed when analyzing the January 14 denial, the records BALT requested would certainly shed light on the SAO's methods of investigation, how they focused their investigation, and the outcome of the investigation. As the records would involve an investigation into the alleged misconduct of the specific police officer, the public's interest in the integrity of the City's police force and the SAO's interaction with it, we can readily see that the information BALT sought would be in the public interest.

It may well be the case that the SAO released a similar memorandum to the public about the officer and the charges BALT asked about in the January 31 request. We have no doubt, as the SAO argued, that the incident was highly publicized by the media, making the release of such records redundant. But nowhere in the record did the SAO advance this as a reason for its denial of BALT's January 31 fee waiver request. If they had done so,

40

we might have found that rationale compelling. We decline to speculate whether facts analogous to those alleged in the July 27 letter existed and were applicable to the January 31 requested disclosure. For the reasons discussed, we hold that the denial of the January 31 fee waiver request was also arbitrary and capricious.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1251s20cn.pdf